CASE NOS.  09-4317
09-4320
09-4321
09-4322

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

---

**FENCORP, CO.**
Plaintiff-Appellee,

vs.

**OHIO KENTUCKY OIL CORPORATION,** *et al.*
Defendants-Appellants.

---

On Appeal from the United States
District Court, Northern District of Ohio,
Eastern Division (Case No: 5:06-cv-0506)
(Lead Case No: 5:06-cv-00260)

---

FIRST BRIEF: BRIEF OF DEFENDANTS-APPELLANTS
OHIO KENTUCKY OIL CORPORATION AND
CAROL CAMPBELL

---

Thomas W. Connors (0007226)
Gordon D. Woolbert, II (0068581)
Black, McCuskey, Souers & Arbaugh
220 Market Avenue South, Suite 1000
Canton, Ohio  44702
Telephone:  330-456-8341
Telefax:  330-456-5756
tconnors@bmsa.com
gwoolbert@bmsa.com

*Counsel for Defendants-Appellants Ohio Kentucky Oil Corporation and Carol Campbell*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Defendant Ohio Kentucky Oil Corporation ("Ohio Kentucky" or "OKO") is not a subsidiary or affiliate of a publicly owned corporation.  No publicly owned corporation has a financial interest in the outcome of this case.

# **TABLE OF CONTENTS**

Page

CORPORATE DISCLOSURE STATEMENT ………………………………….i

TABLE OF CONTENTS…........…………………………………………ii

TABLE OF AUTHORITIES……………………………………….....v

STATEMENT REGARDING ORAL ARGUMENT……………………………...x

STATEMENT REGARDING JURISDICTION…………………………….......x

STATEMENT OF THE ISSUES………………………..………………..xi

STATEMENT OF THE CASE………………………………………………1

STATEMENT OF FACTS……………………………………………………2

SUMMARY OF ARGUMENT……………………………………….....4

ARGUMENT…………………………………………………….....8

I.    The District Court Erred in Denying Motion to Dismiss Plaintiff's Complaint for Failure to State a Claim…………………………….8

II.   The District Court Erred in Denying Summary Judgment on Plaintiff's Federal Securities Fraud Claims and State Claims……………………12

III.  The District Court Erred in Granting Judgment as a Matter of Law That Plaintiff's Partnership and Joint Venture Interests are Securities……………………………………………………….20

IV.   The District Court Erred in Denying Defendants' Rule 50(b) Motion on the Issues of Whether Federal Securities Fraud Claims were Barred by the Two-Year Statute of Limitations and Justifiable Reliance……………………………………………..…22

V.  The Jury Instructions Incorrectly Stated the Law Regarding
Presumption of Reliance and Damages for the Federal Securities
Fraud Claims, and the Repose Period for the State Securities
Claims……………………………….....................................34

VI.  The District Court Erred in Entering Judgment on Fencorp's
State Claims on a Verdict Inconsistent with the Jury's Interrogatory
Answers…………………………………………………….....48

VII.  The District Court Erred in Imposing Discovery Sanctions by
Granting Judgment against Defendants on Their Federal
Preemption Defense to Fencorp's State Securities Non-Registration
Claims…………………………………………………….....52

CONCLUSION……………………………………………………...59

CERTIFICATE OF COMPLIANCE……………………………………...60

CERTIFICATE OF SERVICE……………………………………….61

ADDENDUM…………………………………………………………..62

Appellant's Designation of Relevant Court Documents………...…………...63

17 C.F.R. §230.506 [S.E.C. Rule 506 of Regulation D]…………...……...66

17 C.F.R. §240.10b-5 [S.E.C. Rule 10b-5]...………………………………67

15 U.S.C. §78j(b) [Section 10(b) of the Securities Exchange
Act of 1934]…...………………………………………………..68-69

Amended Substitute House Bill 7, 125th General Assembly, 2003
Ohio Laws File 11……………………………………………..70-72

F.R.C.P.  9…………………………………………………….73-74

F.R.C.P. 37……………………………………………………75-79

F.R.C.P. 49……...…………………………………...……......80-81

F.R.C.P. 59…...…………………………………………...…...82-83

O.R.C. 1.58……………………………………………………………..84

O.R.C. 1707.43…………………………………………………………85

U.S. Dist. Ct. Rules N.D. Ohio, LR 37.1…………………………………86

# <u>TABLE OF AUTHORITIES</u>

PAGE

<u>CASES</u>

*Affiliated Ute Citizens of Utah v. United States,*
406 U.S. 128 (1972)……………………………………………..35, 36, 37, 40

*Agristor Leasing v. Saylor,* 803 F.2d 1402 (6th Cir.1986)………………………..33

*Bahamas Agr. Industries Ltd. v. Riley Stoker Corporation*,
526 F.2d 1174 (6th Cir.1975)…………………………………………………48, 50

*Basic, Inc. v. Levinson,* 485 U.S. 224 (1988)………………..……………35, 36, 37

*Bass v. Jostens, Inc*., 71 F.3d 237 (6th Cir.1995)……………………………..53, 57

*Beil v. Lakewood Engineering and Manufacturing Company*,
15 F.3d 546 (6th Cir.1994) …………………………………………………...53, 58

*Bender v. Southland Corporation*, 749 F.2d 1205 (6th Cir. 1984)……………..9, 11

*Betts v. Costco Wholesale Corporation*, 558 F.3d 461 (6th Cir.2009) …………..48

*Black Law Enf. Officers Ass'n v. City of Akron,*
824 F.2d 475 (6th Cir.1987)……………………………………………………12

*Brannon v. Rinzler,* 77 Ohio App.3d 749 (1991)…………………………………21

*Brown v. Earthboard Sports U.S.A., Inc.*,
481 F.3d 901 (6th Cir.2007)……………………………..………29, 30, 32, 34

*Cameron v. Seitz,* 38 F.3d 264 (6th Cir.1994)………………………………...8

*Cent. On Line Data Sys., Inc. v. Filent Corp*., Nos. 95-1016, 95-1054,
1996 WL 483031 (6th Cir. Aug. 23, 1996)..…………………………………48

*Chiarella v. United States,* 445 U.S. 222 (1980)…………………………...36, 37

*Chilcutt v. United States*, 4 F.3d 1313 (5th Cir. 1993).....................................57-58

*Dunn v. Zimmerman*, 69 Ohio St.3d 304 (1994)………………..17, 18, 19, 20

*Dura Pharmaceuticals, Inc. v. Broudo,* 544 U.S. 336 (2005)…………… 39, 43, 44

*Elster v. Alexander*, 75 F.R.D. 458 (N.D. Ga. 1977)………………….……..11

*Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc.,*
343 F.3d 189 (2nd Cir. 2003)…..……………………………………...29, 32, 33

*Fifth Third Bank of Columbus v. McCloud,*
90 Ohio App.3d 196 (1993)……………………………………….............14, 15

*Goldberg v. Cohen*, 7th Dist. No. 01 CA 49, 2002-Ohio-3012…………...…..13, 47

*Greenburg v. Hiner,* 359 F.Supp.2d 675 (N.D. Ohio 2005)………………23, 24, 26

*Harner v. Prudential Bache Securities, Inc.,*
35 F.3d 565 (4th Cir.1994)……………...…………………………………...24

*Harner v. Prudential Bache Securities, Inc.*
785 F.Supp. 626 (E.D. Mich. 1992)..……………………………………...24

*Helman v. EPL Prolong, Inc.*, 139 Ohio App.3d 231 (2000)………..……………14

*Hoxworth v. Blinder, Robinson & Co., Inc.,*
903 F.2d 186 (3rd Cir.1990)……………...………………………………42

*Huddleston v. Herman & MacLean*, 640 F.2d 534 (5th Cir.1981)..……..………….42

*Huerta v. Cincinnati Milacron Company*, Hamilton App. No. C-860307
(March 25, 1987), 1987 WL 8419……………………………………………...17

*In re D'Arcy*, 142 F.2d 313 (3d Cir.1944)..………………………………..56

*J & R Marketing, SEP.,* 549 F.3d 397 (6th Cir.2008)……………………………36

*Jackvony v. RIHT Financial Corp.,* 873 F.2d 411 (1st Cir.1989)……………...…29

*K & T Enterprises, Inc. v. Zurich Insurance Company,*
97 F.3d 171 (6th Cir.1996)…...…....................................................20, 22

*Kuhn v. Sabo*, 11th Dist. No. 2002-G-2460, 2003-Ohio-1747 …………………...14

*L.C. Capital Partners, L.P. v. Frontier Ins. Group, Inc.,*
318 F.3d 148 (2nd Cir.2003)……..……………………………………………23

*Meador v. Cabinet for Human Resources,*
902 F.2d 474 (6th Cir.1990)…………..…………………………………………...8

*Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Dabit,*
547 U.S. 71 (2006)……………………………………………………………….40

*Micrel, Inc. v. TRW, Inc.*, 486 F.3d 866, (6th Cir. 2007)…….....…………………34

*Molecular Technology Corp. v. Valentine,*
925 F.2d 910 (6th Cir.1991)………………………………………………….....28

*New England Health Care Pension Fund v. Ernst & Young, LLP,*
336 F.3d 495 (6th Cir.2003)………………………………………………………23

*Nieman v. Press & Equipment Sales Co.*
588 F.Supp. 650 (S.D. Ohio 1984)….…………..…………………………...17

*One-O-One Enterprises, Inc. v. Caruso,*
848 F.2d 1283 (D.C. Cir. 1988)……………………………………………...29

*Portage II v. Bryant Petroleum Corp.,*
899 F.2d 1514 (6th Cir.1990)……………………………………………..48

*Radvansky v. City of Olmsted Falls*,
496 F.3d 609 (6th Cir.2007)……………………………………………………48

*Randall v. Loftsgaarden,* 478 U.S. 647 (1986)……………………40, 41, 42, 44, 45

*Regents of the University of California v. Credit Suisse First Boston
(USA), Inc.,* 482 F.3d 373 (5th Cir.2007)………………………………………38

*Reid v. White Motor Corporation*, 886 F.2d 1462 (6th Cir.1989)………………...56

*Rissman v. Rissman,*  213 F.3d 381 (7th Cir.2000)…………………………...29, 30

*Rodas v. Manitaras,* 159 A.D.2d 341 (1st Dep't. 1990)…………………………..33

*Rousseff v. E.F. Hutton Company, Inc.,*
843 F.2d 1326 (11th Cir.1988)……………………………………………………43

*Sekulovski v. Bubev*, Franklin App. No. 99AP-1224 (Aug. 8, 2000)……………..19

*Sharp v. Coopers & Lybrand,* 649 F.2d 175 (3rd Cir.1981)……………………...43

*Southward v. South Central Ready Mix Supply Corporation,*
7 F.3d 487 (6th Cir.1993)…………………………………………………………12

*Stone v. Kirk,* 8 F.3d 1079 (6th Cir.1993)…………………………………………...43

*Stoneridge Investment Partners, LLC v. Scientific Atlanta, Inc.,*
552 U.S. 148 (2008)…………………………………………………..35, 36, 37, 40

*U.S. v. Mercy Health System of Southwest Ohio,*
188 F.3d 510 (6th Cir.1999)……………………………………………………..9

*Van Fossen v. Babcock & Wilcox Company*,
36 Ohio St.3d 100 (1988)…..………………..……………………………………16

*Vargo v. Clark*, 128 Ohio App.3d 589 (1998)…………………………...19, 22

*Waggoner v. Mosti,* 792 F.2d 595 (6th Cir.1986)…………………………………51

*White v. Crown Equipment*, 160 Ohio App.3d 503 (2005)…..………………………17

*Wright v. National Warranty Co.,* 953 F.2d 256 (6th Cir.1992)…………………..28

*Zobrist v. Coal-X, Inc.,* 708 F.2d 1511 (10th Cir.1983)……………........………...28

RULES, REGULATIONS AND STATUTES

17 C.F.R. §230.506 [S.E.C. Rule 506 of Regulation D]……………...………53, 54

17 C.F.R. §240.10b-5 [S.E.C. Rule 10b-5]..………………………………………...43

Amended Substitute House Bill 7, 125th General Assembly 2003
Ohio Laws File 11………………………………………………………………...16

15 U.S.C. §78j(b) [Section 10(b) of the Securities
Exchange Act of 1934]…..………..……………………………………..39, 40-41

28 U.S.C. §1291……………………………………………………………………x

28 U.S.C. §1331……………………………………………………………….....x

28 U.S.C. §1367(a)……………………………………………………………....x

F.R.C.P. 9(b) ………………………………………………………….…..4, 9, 11

F.R.C.P. 37……………………………………………………………53, 55, 57, 58

F.R.C.P. 37(1)(b)……………………………………………...…………….………55

F.R.C.P. 49 (b)…………………………………………………………………...7

F.R.C.P. 49(b)(3)…………………………………………………...…….....7, 48

F.R.C.P. 49(b)(4)………………………………………………….……….48, 49

F.R.C.P. 50(b)……………………………………………………………22, 29

F.R.C.P. 59(e)…………………………………………………….……….48, 51

O.R.C. 1.58……………………………………………………………5, 14, 15

O.R.C. Chapter 1336………………..……………………………………………15

O.R.C. 1707.43…………………………………………..………13, 14, 15, 16, 17, 47

O.R.C. 1775………………………………………………………………..22

U.S. Dist. Ct. Rules N.D. Ohio, LR 37.1…………………………12, 54, 55, 56, 57

## **STATEMENT REGARDING ORAL ARGUMENT**

Oral argument is requested and should be permitted by reason of the legal and factual complexity of this case.

## **STATEMENT REGARDING JURISDICTION**

The district court possessed subject matter jurisdiction pursuant to 28 U.S.C. §1331 by virtue of Fencorp's federal securities claims and supplemental jurisdiction of Fencorp's state claims by virtue of 28 U.S.C. §1367(a). This court has jurisdiction under 28 U.S.C. §1291. The final order in this case, disposing of the last motion to amend judgment/new trial was entered August 18, 2009. The notice of appeal in this case was filed September 14, 2009.

## STATEMENT OF THE ISSUES

I.    **Whether the District Court Erred in Denying Motion to Dismiss Plaintiff's Complaint for Failure to State a Claim.**

II.    **Whether the District Court Erred in Denying Summary Judgment on Plaintiff's Federal Securities Fraud Claims and State Claims.**

III.    **Whether the District Court Erred in Granting Judgment as a Matter of Law That Plaintiff's Partnership and Joint Venture Interests are Securities.**

IV.    **Whether the District Court Erred in Denying Defendants' Rule 50(b) Motion on the Issues of Whether the Federal Securities Fraud Claims were Barred by the Two-Year Statute of Limitations and Justifiable Reliance.**

V.    **Whether the Jury Instructions Incorrectly Stated the Law Regarding Presumption of Reliance and Damages for the Federal Securities Fraud Claims, and the Repose Period for the State Securities Claims.**

VI.    **Whether the District Court Erred in Entering Judgment on Fencorp's State Claims on a Verdict Inconsistent with the Jury's Interrogatory Answers.**

VII.    **Whether the District Court Erred in Imposing Discovery Sanctions by Granting Judgment Against Defendants on Their Federal Preemption Defense to Fencorp's State Securities Non-Registration Claims.**

## STATEMENT OF THE CASE

Plaintiff filed a complaint on March 6, 2006, alleging federal securities fraud and non-registration as well as state securities fraud, non-registration and related claims.   RE.1. On September 28, 2007, the district court, upon defendants' motion dismissed the federal securities non-registration and fraud claims barred by the applicable statute of repose, but declined to dismiss the remaining federal securities fraud claims and the state securities claims.   RE.35, p.19.  On May 12, 2008, the district court, upon defendants' motion for summary judgment, dismissed the remaining federal non-registration claims as barred by the one-year statute of limitations, but declined to enter judgment for defendants on the remaining federal securities fraud claims, and the state securities, breach of contract and breach of fiduciary duty claims.   RE.78, pp.13-14.

On May 28, 2008, the court imposed discovery sanctions by deeming established as fact that defendants engaged in a general solicitation, thereby precluding defendants' federal preemption defense to the state securities non-registration claims.   RE.132, p.7.

At trial, the court granted plaintiffs' motion for judgment that the partnership and joint venture interests purchase by plaintiffs were securities, and denied defendants' motion for judgment on the federal securities fraud claims based on the two-year statute of limitations and the element of justifiable reliance.   RE.155,

p.1141;  RE. 167;  RE.197, p.8.  The court instructed the jury over defendants'
objection that the measure of damages was the price paid for the investments
without deduction for tax benefits, and that reliance could be presumed.  RE.162,
pp.1188, 1191, 1299.  The court also denied defendants' request to instruct the jury
that Fencorp's state securities claims may not be brought more than five years from
the date of sale.  RE.149, pp.20, 23, 26;  RE.103, pp.12, 13, 15;  RE.162, pp.1197,
1201, 1298.

The jury reached a verdict of $849,858 on Fencorp's claims.  The court
determined that the verdict was inconsistent with the jury's interrogatory answers,
denied defendants' request for resubmission to the jury, and entered judgment in
the amount of $1,404,476.   RE.172, pp.1324-25;  RE.174.  On August 18, 2009,
the court denied defendants' motion to amend the judgment or order a new trial,
but reduced the judgment to $1,012,835.50.   RE.197, p.15.

## STATEMENT OF THE FACTS

The present case arises out of Fencorp's purchase of interests as special
general partner in five limited partnerships and as joint venturer in twenty-one joint
ventures through Ohio Kentucky Oil Corporation ("Ohio Kentucky") from 2000 to
2003 for $3,980,349.50.  RE.1, pp.4-7; Appx.p.69, Def.1030.  Fencorp was owned
by Frederick E. Nonneman ("Nonneman"), who died in 2006.  Prior to 2000,
Nonneman had invested $6,520,995 in oil well partnerships through Ohio

Kentucky.  Appx.61, Def.1029.  In 2000, he offered $2,000,000 to buy one-third of the shares of Ohio Kentucky's stock.  It was subsequently decided that the $2,000,000 would be invested by Fencorp in partnerships, not stock, so that tax benefits would be available.  RE.138, pp.149-150.

In February, 2002, Nonneman's daughter, Lois Nonneman, general manager of Fencorp, prepared a spreadsheet detailing the low success rate of the oil wells being drilled by the partnerships and joint ventures.   RE.130, pp.155-156, 121; Appx.pp.1-4, Def.1018.  She reviewed the spreadsheet showing the high dry well rate with Nonneman and was concerned that Fencorp would not recover its investment.  RE.130, pp.155, 158.

All the joint ventures entered by Fencorp and Nonneman contained disclaimers of reliance on extra-contractual representations.  Appx.p.22, Def.1024, p.387.  Cost estimates for joint ventures were not generally provided to Nonneman and Fencorp.   RE.161, pp.1003-1007;  RE.138, pp.164-165.  At trial, plaintiffs only presented evidence of a handful of estimates for joint ventures relevant to the fraud claims, which were actually received by Nonneman.   RE.157, pp.37-41. (Pl.73, 84, 88, 90, 92, 133, NON bates-stamp indicates documents from Nonneman's files.)

## SUMMARY OF ARGUMENT

Fencorp's federal securities fraud claims under §10(b) of the Securities Exchange Act of 1934 ("1934 Act") should have been dismissed because they fail to meet the heightened pleading requirements of the PSLRA and F.R.C.P. 9 regarding specifying misleading statements, scienter, reliance, loss causation, and the statute of limitations. Plaintiff alleges false cost and profit estimates, but fails to specify estimates for 24 of the 26 transactions in this case. For the same reasons described in the related case of *Nolfi, et al. v. Ohio Kentucky Oil Corporation, et al.,* 6th Cir. Case No. 09-4315 ("*Nolfi* case"), the factual allegations don't specify the content of the misrepresentations and don't support a strong inference of scienter or the other challenged elements of the §10(b) claims. For similar reasons, summary judgment should have been granted on the challenged elements of the §10(b) claims.

Fencorp's state securities fraud claims should also have been dismissed for failure to meet the Rule 9 requirements of alleging the contents and other details of the claimed misrepresentations. There were no allegations regarding what the false estimates were for 24 of the 26 transactions. Of the two estimates specified, one involved a difference of less than 10% between estimated and actual costs, and the other involved a circumstance where estimated costs were not incurred by reason

of drilling dry wells.  Moreover, there were no allegations addressing whether defendant Carol Campbell was involved in the claimed misrepresentations.

Summary judgment should have been granted on Fencorp's state securities and common law fraud claims outside the four-year statute of repose for such claims.  An amendment extending the statute of repose to five years, enacted after the subject transactions were completed, is not applicable.  Ohio's general savings statute, O.R.C. 1.58, precludes amendments from affecting obligations or liabilities previously acquired under a prior statute.  Moreover, the amendment may not be applied retroactively because it does not specify that it shall be so applied, and retroactive application would be unconstitutional.

Fencorp's breach of fiduciary duty claim is also subject to summary judgment because Fencorp has failed to obtain an accounting, which is a prerequisite to fiduciary duty claims under Ohio law.

As in the *Nolfi* case, the district court erred in entering judgment that Fencorp's general partnership and joint venture interests were securities, because there is evidence that Fencorp had sufficient powers, as partner, to protect its interests.

The district court erred in denying judgment as a matter of law on the two-year statute of limitations defense and the element of justifiable reliance.  Plaintiffs had inquiry notice by reason of high dry well rates, well over two years before

filing their claims.    Plaintiffs warranted that they were not relying on representations not contained in their subscription agreements, thereby precluding justifiable reliance on representations or omissions of cost and profit estimates, which were not contained in the joint venture agreements.

The district court erred in instructing the jury in connection with the §10(b) claims to apply a presumption of reliance and that the measure of damages was the recovery of the purchase price without deduction for tax benefits.    The presumption of reliance is not applicable where there was no fiduciary relationship between buyer and seller and therefore no duty to disclose.  The correct measure of damages is the drop in value of the investments caused by a misrepresentation or omission, not the purchase price.    Moreover, tax benefits are deductible from damages where, as in this case, their value was obtained as represented.

The district court also erred by refusing to instruct the jury regarding the statute of repose applicable to Fencorp's state securities claims.  As a result, the jury's damages findings included transactions outside of the statute of repose.

This result led to the court erring in entering judgment on the jury's verdict. The court changed the verdict from $849,858 to $1,404,769, on the grounds of inconsistency with an interrogatory answer, and refused defendants' request for resubmission to the jury.  Fencorp later agreed that the $1,404,769 verdict included transactions outside the repose period, but also argued for a larger judgment based

on inconsistencies between interrogatory answers. The court, speculating regarding the jury's intent, denied a new trial, and amended the judgment to $1,012,835.50. The court erred by violating Rule 49(b)'s prohibition against entry of judgment where interrogatory answers are inconsistent with each other and the verdict, and by overruling defendants' motion for a new trial.

Finally, the district court erred in imposing discovery sanctions granting judgment against defendants' federal preemption defense to Fencorp's state securities non-registration claims. Federal law preempts state securities registration laws, with certain exceptions, including where defendants have engaged in a general solicitation. The district court deemed a general solicitation to be established as fact as a discovery sanction and barred the federal preemption defense. This sanction was imposed without the filing of a motion to compel, an order compelling discovery or the violation of a discovery order. Moreover, circumstances justifying the drastic sanction of default judgment, such as willfulness, were not present.

## ARGUMENT

**I.   The District Court Erred in Denying Motion to Dismiss Plaintiff's Complaint for Failure to State a Claim.**

**A.   Standard of Review.**

This court reviews de novo, the denial of a motion to dismiss for failure to state a claim.  *Cameron v. Seitz*, 38 F.3d 264, 270 (6th Cir. 1994); *Meador v. Cabinet for Human Resources*, 902 F.2d 474, 475 ((6th Cir. 1990).

**B.   Plaintiff Failed to Adequately Plead § 10(b) Claims.**

For the reasons described in Section I. B. of defendants' brief in the *Nolfi* case, the district court erred in denying defendants' motion to dismiss Fencorp's §10(b) claims because plaintiff failed to adequately plead the elements of misleading statements, scienter, reliance and loss causation, and failed to adequately plead that the claims are not barred by the statute of limitations.  As in the *Nolfi* case, Fencorp failed to specify false estimates or prior misleading statements for all but two of the subject 26 transactions.  One of the two estimates specified involved a difference of less than 10% between estimated and actual costs, and the other involved a circumstance where estimated costs were not incurred by reason of drilling dry wells.  RE.1-1 to 1-4.

**C.   Plaintiff Failed to Adequately Plead State Securities Fraud Claims.**

The district court erred in denying defendants' motion to dismiss plaintiffs' state fraud claims because they did not state a case with the degree of particularity required by F.R.C.P. 9(b). "To satisfy [Rule] 9(b), a plaintiff must at a minimum allege the time, place and contents of the misrepresentation(s) upon which he relied." *Bender v. Southland Corporation*, 749 F.2d 1205, 1216 (6th Cir.1984). "As part of the F.R.C.P. 9(b) requirement, a person alleging fraud must identify the individuals who participated in the fraudulent scheme." *U.S. v. Mercy Health System of Southwest Ohio*, 188 F.3d 510, 1999 WL 618018 at *2 (6th Cir.1999).

The gravamen of plaintiff's fraud claim was that defendant Ohio Kentucky "made several material misrepresentations of material fact and/or failed to disclose material facts concerning the estimated costs of drilling wells and OKO's anticipated profit in the OKO Programs and the Timbuck Programs" which resulted in "inflating estimated expenses used to determine the cost of units in the Joint Ventures and Limited Partnerships." As factual support, Fencorp pointed "by way of illustration, to the Turnkey Drilling and Testing Cost for the Marie Johnson Wells #1, #2 & #3 prepared by OKO [is] attached as Exhibit 1 and a summary of the actual costs for the Marie Johnson Wells #1, #2 & #3 prepared by OKO [ ] attached as Exhibit 2;" as well as "the estimated costs for the Caldwell Project #2 prepared by OKO [ ] attached as Exhibit 3;" and "the actual costs for the Caldwell Project #2 prepared by OKO [ ] attached as Exhibit 4."   RE.1, pp.11-12, ¶¶66-67.

Plaintiff also alleged that defendant Ohio Kentucky failed to disclose the fact that certain programs were drilled and completed by another operator ( RE.1, p.12, ¶67), misrepresented that the purchase price for partnership interests would be used for drilling wells ( RE.1, p.12, ¶68), and misrepresented "the likelihood of success," "claims of wealth" and "geologist reports to provide a façade of scientific authenticity."  RE.1, p.13, ¶73.

These fact allegations were incorporated into plaintiff's summary state securities fraud claims against both defendants Ohio Kentucky and Carol Campbell.    RE.1, p.14, ¶¶77-85.   There were no factual allegations in the complaint addressing whether Carol Campbell was involved in the above described misrepresentations or omissions.

Plaintiff's allegations involve the purchase of interests in twenty-six separate partnerships and joint ventures from March 31, 2000 through August 14, 2003. However, the only specific factual allegations involve two transactions by way of illustration in the form of four exhibits, including two cost estimates and two summaries of actual costs prepared by Ohio Kentucky.  RE.1-1 to 1-4.  Plaintiff alleges that the exhibits for the first transaction, Marie Johnson, #1, #2 & #3, show anticipated total drilling and completion costs, less profit, of $420,000 versus actual drilling but no completion costs of $193,375.52.  RE.1-1, 1-2.  The exhibits

for the second transaction, Caldwell #2, show total estimated costs of $553,050.00 versus actual costs of $511,245.61.  RE.1-3, 1-4.

Plaintiff makes no allegations in its complaint regarding documents or specific statements relating to the remaining twenty-four transactions. Regarding the two transactions, for which cost estimates were attached as exhibits, there is no allegation that the estimates were received by plaintiffs at the time of the transactions. The cost estimates have bates-stamped numbers starting with the letters "OK", indicating they were provided in discovery in a previous related case subsequent to the subject transactions.

Plaintiff has failed to meet F.R.C.P. 9(b)'s requirement to specify the contents of the alleged misrepresentations.  *Bender*, 749 F.2d at 1216.  When the misrepresentations are contained in documents, a plaintiff must provide the following:

> "There must be . . . specific identification of the financial documents; identification of the false statements made and in which portions of the financial documents they appear; in what respects the statements were false, misleading or inaccurate or what omissions were made or why the documents are believed to be misleading; when the documents were issued and which defendants were responsible for their issuance."

*Elster v. Alexander*, 75 F.R.D. 458, 461 (N.D. Ga.1977)

Plaintiff not only failed to specify the contents of the alleged misrepresentations, they fail to specify when the documents were issued and what involvement, if any, Carol Campbell had with the misrepresentations.

Plaintiff also failed to specify the contents of the misrepresentations in response to discovery requests.  RE.94-6, p.3. This matter was presented to the court as a discovery dispute pursuant to L.R. 37.1 and by objection to pursuit of fraud theories based on alleged misrepresentations whose contents had not been specified.  RE.94;  RE.95, pp.21-25;  RE.116, pp.3, 67.  The district court allowed the fraud theories to be presented at trial despite defendants' objections.  RE.138, pp.18-19.

## II.    The District Court Erred in Denying Summary Judgment on Plaintiff's Federal Securities Fraud Claims and State Claims.

### A.    Standard of Review.

Denial of a summary judgment motion is reviewed for abuse of discretion. *Southward v. South Central Ready Mix Supply Corporation,* 7 F.3d 487-492 (6th Cir. 1993). "A district court abuses its discretion when it relies on clearly erroneous findings of fact, or when it improperly applies the law or uses an erroneous legal standard."  *Black Law Enf. Officers Ass'n v. City of Akron*, 824 F.2d 475, 479 (6th Cir. 1987).

### B.    Section 10(b) Claims.

For the reasons described in Sections II. B. through E of defendants' brief in the *Nolfi* case, the district court erred in denying defendants' motion for summary judgment on Fencorp's §10(b) claims. Fencorp failed to provide evidence of prior misleading disclosures, a strong inference of scienter, actual reliance and loss causation.

### C.    State Securities Fraud Statute of Repose.

The district court erred in denying defendants' motion for summary judgment on plaintiffs' state securities fraud claims that were not filed within the applicable statute of repose period. The statute of repose in O.R.C. 1707.43 applies to both plaintiff's claims of violation of O.R.C. Chapter 1707 and to plaintiff's common-law fraud claims. RE.1, pp.14-15, ¶¶77-85, *Goldberg v. Cohen*, 7th Dist. No. 01 CA 49, 2002-Ohio-3012 at ¶15. ("Where a claim is grounded in common-law fraud arising from a sale in violation of R.C. Chapter 1707, the statute of limitations governing the claim is R.C. 1707.43"). The version of O.R.C. 1707.43(B), in effect at the time of the transactions in this case, contains a four-year statute of repose which precludes plaintiff's state securities claims arising before March 6, 2002. Moreover, although it is not necessary to reach this issue, it would be unconstitutional to retroactively apply, the amendment to O.R.C. 1707.43, that was enacted after the subject transactions, and which provides for a five-year statute of repose.

At the date of the transactions underlying plaintiff's state securities fraud claims, O.R.C. 1707.43(B) provided in pertinent part that "[n]o action for the recovery of the purchase price [for purchases of securities in violation of O.R.C. 1707] shall be brought . . . more than four years from the date of such sale."  Under Ohio law, a cause of action under O.R.C. 1707.43 accrues when the securities subscription agreement is executed. *Kuhn v. Sabo*, 11th Dist. No. 2002-G-2460, 2003-Ohio-1747 at ¶14; *Helman v. EPL Prolong, Inc.*, 139 Ohio App.3d 231, 245 (2000).   In the present case, the subscription agreements underlying plaintiff's claims were executed prior to the date of the amendment to O.R.C. 1707.43(B), on September 16, 2003, which extended the statute of repose from four years to five years.

O.R.C. 1.58 is a general savings statute, which "protects rights and obligations acquired under the law as it existed at the time."  *Fifth Third Bank of Columbus v. McCloud*, 90 Ohio App.3d 196, 199 (1993).  O.R.C. 1.58 provides:

"(A)   The reenactment, amendment, or repeal of a statute does not…:

   (1)   Affect the prior operation of the statute or any prior action taken thereunder;

   (2)   Affect any validation, cure, right, privilege, obligation, or liability previously acquired, accrued, accorded, or incurred thereunder;

   (3)   Affect any violation thereof or penalty, forfeiture, or punishment incurred in respect thereto, prior to the amendment or repeal;

(4)    Affect any investigation, proceeding, or remedy in respect of any such privilege, obligation, liability, penalty, forfeiture, or punishment; and the investigation, proceeding, or remedy may be instituted, continued, or enforced, and the penalty, forfeiture, or punishment imposed, as if the statute had not been repealed or amended…"

In *McCloud*, plaintiff claimed that property transfers in 1988-89 were fraudulent under O.R.C. Chapter 1336, as it existed prior to amendment in 1990. The defendant claimed that the transfers were not fraudulent under amended O.R.C. Chapter 1336 in effect at the time of the complaint. The *McCloud* court held that pursuant to O.R.C. 1.58

"The rights and obligations acquired, as a result of the conveyances and personal guarantees at issue here, were subject to the requirements of O.R.C. Chapter 1336 as it then existed. The amendments to O.R.C. Chapter 1336 do not affect the prior operation of the statute." *Id*., p.199.

In the present case, the right to recover for fraudulent securities transactions under O.R.C. 1707.43(B), as it existed at the time of the transactions, extended for no more than four years after the transaction. Plaintiff argues that the court should apply the amendment to O.R.C. 1707.43(B), in effect at the time of the complaint, which allows a five-year recovery period. This argument is precluded by O.R.C. 1.58 and *McCloud*.  Accordingly, the district court's denial of summary judgment for defendants on this ground should be reversed.

By reason of the above, this court does not need to address whether applying amended O.R.C. 1707.43(B) in this case would be unconstitutionally retroactive. However, this principle would also require reversal of the district court, if this court does reach this issue.

Under Ohio law, a statute is deemed retroactive if it ". . . creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past." *Van Fossen v. Babcock & Wilcox Company*, 36 Ohio St.3d 100, 106 (1988). However, "the issue of whether a statute may constitutionally be applied retrospectively does not arise until there has been a prior determination that the General Assembly has specified that the statute so apply." *Id.*, paragraph two of the syllabus.  The amendment to O.R.C. 1707.43(B) was enacted, effective September 16, 2003, pursuant to Amended Substitute House Bill 7.  The Ohio General Assembly did not specify that the amendment be applied retroactively.  Add., pp.70-72.  As a result, O.R.C. 1707.43(B) may not be applied retroactively to transactions arising prior to the amendment.

Moreover, even if the issue did arise, retroactive application of the amendment to O.R.C. 1707.43(B) would be unconstitutional under Ohio law. "Analysis of whether a statute is unconstitutionally retroactive in violation of Section 28, Article II of the Ohio Constitution requires an initial determination of whether that statute is substantive or merely remedial." *Id.*, paragraph three of the

16

syllabus.  If the statute "imposes new or additional burdens, duties, obligations or liabilities as to a past transaction" it is substantive and therefore unconstitutional to the extent applied retroactively.  *Id.,* p.107.

Under Ohio law, a statute of repose is considered substantive. *Nieman v. Press & Equipment Sales Co*., 588 F.Supp 650 (S.D. Ohio 1984); *White v. Crown Equipment*, 160 Ohio App.3d 503, 509 (2005); *Huerta v. Cincinnati Milacron Company*, Hamilton App. No. C-860307, (March 25, 1987), 1987 WL 8419 at **1-2.

This principle was recently applied to transactions in the related case of *Ohio Kentucky Oil Corp v. Nolfi,* Stark Commons Pleas Case No. 2006CV0007. RE. 53-1.  In that case the court held that applying the amendment to O.R.C. 1707.43(B) retroactively would be unconstitutional, on the grounds that a statute of repose is substantive law.

### D.    State Fiduciary Duty Claims.

The district court erred in denying summary judgment on plaintiffs' breach of fiduciary duty claims because plaintiffs had failed to obtain a partnership accounting.

"The usual and normal remedy for a breach of fiduciary duty or other legal conflict among partners is an accounting."  *Dunn v. Zimmerman*, 69 Ohio St.3d 304, syllabus (1994).  The rationale for this rule is that ". . . until a full accounting

had been done, it [is] impossible to tell, based on the entire scope of partnership transactions, who owed what to whom." *Id.*, p.308. Another justification for the rule is that since ". . . partners were jointly liable for their obligations. Suing one's partner would therefore require the joinder of each member of the partnership as plaintiffs, including the plaintiff. The result would be that, technically, one party would be both plaintiff and defendant in the same cause." *Id.*, p.308.

The Ohio Supreme Court in the *Dunn* case held that an accounting was a prerequisite to an action at law among partners:

> "At common law, then, the prevailing view has been that an accounting is generally a prerequisite to an action at law that arises from the affairs of a partnership. This rule continues to be jurisprudentially sound because of the concern, as valid today as it was a century ago, that determining obligations between partners requires an inquiry into the full scope of the partnership business." *Id.*, p.309.

The *Dunn* court only allowed for exceptions to this rule in rare cases:

> "We recognize, however, that in the universe of disputes that might arise among partners, there may be some for which a formal accounting would be a pointless exercise. Such cases would involve disputes over a very limited time or a number of transactions, whose resolution would not require a searching inquiry into partnership affairs. We emphasize that this would be the exceptional case. It would be the rare case indeed in which a trial court abuses its discretion in ordering an accounting as a means of determining a legal dispute between partners." *Id.*, p.309.

The holding of the *Dunn* case applies to joint ventures as well as partnerships. The distinction between a joint venture and a partnership is that a

joint venture is a single enterprise and a partnership relates to a continuing business. *Vargo v. Clark*, 128 Ohio App.3d 598, 595 (1998). This distinction is probably not relevant in this case because ". . . courts generally apply partnership law to joint ventures." *Id*., p.595. The principle of the *Dunn* case requiring accountings before legal actions was applied to joint ventures in *Sekulovski v. Bubev*, Franklin App. No. 99AP-1224, 2000 WL 1099501 (Aug. 8, 2000).

In Count 6 of the complaint, Fencorp alleges that defendants breached fiduciary duties by ". . . using Fencorp's investments for Defendants' own benefit, and not for the benefit of the joint ventures and limited Partnerships." RE.1, p.15, ¶88.

Fencorp's breach of fiduciary duty claims involve an inquiry into the costs of all transactions involved in drilling numerous wells involved in twenty-six partnerships. It also involves an inquiry into complicated cost accounting issues regarding the application of overhead expenses to the drilling of the various wells. Clearly this would involve a searching inquiry into the affairs of the various partnerships. Therefore, this is not one of the rare cases where a partnership accounting is not required by the *Dunn* case.

The case of *Dunn v. Zimmerman*, *supra*, was the first time that the Ohio Supreme Court recognized a damages claim for breach of fiduciary duty among members of a partnership. *Id*., p.306. The court followed this conclusion

19

immediately with the requirement that the usual remedy for a breach of fiduciary duty in a partnership is an accounting:

> ". . . [W]e conclude that the General Assembly intended that a breach of fiduciary duty among partners is actionable at law.  We conclude also that the usual and normal remedy for a breach of fiduciary duty or other legal conflict among partners is an accounting." *Id*., p.307.

Fencorp has not made a claim for partnership accounting, nor has it added as parties, the partnership and their numerous partners, which would be necessary for a partnership accounting ("suing one's partner would . . . require the joinder of each member of the partnership as defendants. . . ." *Dunn*, 69 Ohio St.3d at 308.)  In the *Dunn* case, the Supreme Court reversed a judgment for damages, for failure to first obtain a partnership accounting.  *Dunn*, 69 Ohio St.3d at 309.  Therefore, the district court erred by not dismissing Fencorp's breach of fiduciary duty claims pursuant to the *Dunn* case, by reason of Fencorp's failure to first obtain a partnership accounting.

## III.    The District Court Erred in Granting Judgment as a Matter of Law That Plaintiff's Partnership and Joint Venture Interests are Securities.

### A.    Standard of Review.

The district court's application of Rule 50 will be reviewed de novo, both with respect to legal determinations and the sufficiency of evidence.  *K & T Enterprises, Inc. v. Zurich Insurance Company,* 97 F.3d 171, 175-176 (6th Cir. 1996).

**B.    Plaintiff's Partnership and Joint Venture Interests Are Not Securities.**

The district court erred in entering judgment as a matter of law that Fencorp's partnership and joint venture interests were securities within the meaning of the federal securities acts for the reasons described in Section III. B. of the *Nolfi* brief.

The subject interests are also not securities within the meaning of Ohio's securities law.  In *Brannon v. Rinzler*, 77 Ohio App.3d 749, 754 (1991), the court held that a partnership interest does not constitute a security which is required to be registered under Ohio law where the investor has the right to exercise any managerial control.  The *Brannon* court found that such control existed where the partnership agreement stated that the partners may remove the managing agent with or without cause by written consent of partners holding three-quarters of the capital accounts of the partnership, the managing agent had the right to withdraw upon majority consent of the partners, and three-quarters of the partners could consent to dissolve and liquidate the partnership.  In the present case, the limited partnership agreements entered into by Fencorp, a special general partner, provided for the removal of the general partner by a vote of 80% of the partnership interests at Section 6.05, and dissolution of the partnership upon vote of 80% of the partnership interests at Section 7.01(c).    RE.64-3, pp.9-10; Appx.pp.47, 49,

Def.1025,pp.11, 13.   This right to control is sufficient to exclude the subject partnership interest from the definition of "security" under Ohio securities law.

This principle also applies to joint ventures since "…courts generally apply partnership law to joint ventures."  *Vargo v. Clark,* 128 Ohio App.3d 589, 595 (1998).  The Uniform Partnership Law set forth in O.R.C. Chapter 1775 would therefore be generally applicable to joint ventures.  O.R.C. 1775.17(A) provides that "All partners have equal rights in the management and conduct of the partnership business."  Such right of control would take the joint ventures out of the definition of "security" under Ohio securities law.

## IV.   The District Court Erred in Denying Defendants' Rule 50(b) Motion on the Issues of Whether Federal Securities Fraud Claims were Barred by the Two-Year Statute of Limitations and Justifiable Reliance.

### A.   Standard of Review.

The standard of review for denial of a Rule 50(b) motion is the same as for the granting of such motions as discussed above.   Where a prior summary judgment motion has been denied, as with the justifiable reliance issue, this court will review only the denial of the Rule 50(b) motion.  *K & T Enterprises, Inc.,* 97 F.3d 171, 174 (6th Cir.1996).

### B.   Plaintiffs Were on Notice of Their Claims More Than Two Years Prior to Filing Their Complaint.

The district court erred in denying defendants' motions for judgment as matter of law because the evidence demonstrates that plaintiffs had either actual or

constructive notice of their federal securities fraud claims more than two years prior to filing their complaint. Section 10(b) claims must be brought within two years after the discovery of the facts constituting the violation. *Greenburg v. Hiner*, 359 F.Supp.2d 675, 681 (N.D. Ohio 2005). Such discovery encompasses both actual notice and constructive or inquiry notice. *New England Health Care Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 499-500 (6th Cir.2003). Under the inquiry notice standard, the statute of limitations period begins to run when the plaintiff should have discovered, by exercising reasonable diligence, the facts underlying the alleged fraud. *Id*., p.501. Under the inquiry notice standard, plaintiffs are under a duty to begin investigating the possibility of fraud when they become aware of suspicious facts or "storm warnings." *Id*., p.501. "If plaintiffs conducted no inquiry when their awareness of 'storm warnings' gave rise to the duty to investigate, knowledge of the fraud 'will be imputed as of the date the duty arose.'" *Greenburg v. Hiner*, 359 F.Supp. 2d at 682, citing *L. C. Capital Partners, L.P. v. Frontier Ins. Group, Inc*., 318 F.3d 148, 154 (2nd Cir.2003).

This court has previously concluded that only a low level of awareness of problems with an investment is necessary to trigger a duty to investigate:

> "… The courts have also found that once a plaintiff has acquired facts that should put him on notice of an irregularity or problem with an investment, he is on inquiry notice of the fraud and anything he could have discovered by a diligent search will be imputed to him. (Citations omitted.)

As one court has stated:

> The plaintiff need only possess a low level of awareness; he need not fully learn of the alleged wrongdoing.  Knowledge of *all* facts is not required to set off the prescriptive clock.  Thus, the clock begins to tick when a plaintiff senses 'storm warnings,' not when he hears thunder and sees lightning.'"

*Harner v. Prudential Bache Securities, Inc*., 35 F.3d 565 at *4 (6th Cir.1994).

This court has consistently phrased the inquiry notice standard in terms of the possibility of fraud as opposed to the probability of fraud.  *Greenburg*, 359 F.Supp. 2d at 682.  In *Greenburg*, the court explained that "[t]he plaintiff need not have before him all the facts necessary to establish that a statement was untrue or omitted before the limitations period accrues.  Once a plaintiff is in possession of facts sufficient to make him suspicious, or that ought to make him suspicious, he is deemed to be on inquiry notice."  *Greenburg*, 359 F.Supp. 2d at 682-683, citing *Harner v. Prudential Bache Securities, Inc*., 785 F.Supp. 626, 633 (E.D. Mich.1992).  The *Greenburg* court went on to explain that "'[s]torm warnings' include 'any indication[s] in … [corporate] communications that could reasonably be considered contrary to the rosy predications that the plaintiffs claim were misrepresentations.'"  *Greenburg,* 359 F.Supp. at 683, quoting *Harner*, 785 F.Supp. at 634.

In the present case, plaintiffs claims were filed March 6, 2006, and therefore, would be barred if they should have been discovered before March 6, 2004.

In their complaint, plaintiffs allege misrepresentations regarding the likelihood of success, wealth, and estimated expenses to increase amounts invested to make money drilling dry wells.   RE.1, p.13, ¶¶71, 73.

The oil and gas investments in this case cover the period from 2000 thru 2003.  Those actively involved in those purchases on behalf of plaintiffs, were Fred Nonneman and his daughter Lois Nonneman.  On or about February 16, 2002, Lois Nonneman prepared a spreadsheet regarding the drilling results of certain programs in which Fencorp had invested.     RE.138, pp.155-56; Appx.pp.1-4, Def.1018.  She testified that the schedule reflected that there were a lot of dry wells.    RE.138, p.156.  She also testified that she went into the investments knowing full well that they were highly speculative and that she highly suspected that they would not recover their investment.  RE.138, p.155.

This testimony demonstrates that plaintiffs were well aware of indications that could reasonably be considered contrary to the rosy predictions that plaintiffs are claiming were misrepresentations, as early as 2002.  The possibility of fraud regarding representations of likelihood of success, wealth, and a scheme to make money drilling dry wells by overstating expenses was evident to plaintiffs throughout the time period of their investment, as indicated by Lois Nonneman's

25

testimony and the spreadsheet she prepared on February 18, 2002.    RE.130, pp.155-156, Appx.pp.1-4, Def.1018.   Her testimony makes clear that she was aware of the low success rate and believed that the subject programs were a poor investment, which were highly speculative and not going to return her investment. RE.138, p.155.

This admission by plaintiffs is undisputed and establishes, at the very least, a low level of awareness of low likelihood of success, loss of investment, and a high level of dry wells.  This was sufficient to trigger a duty to investigate, and in fact, Lois Nonneman did investigate and discovered the low success rate as early as 2002.   Appx.pp.1-4, Def.1018.   It is not necessary that plaintiffs have full knowledge of the extent of the alleged fraud in order for the statute of limitations to commence running.   It is only necessary that there be some substantial indication of serious problems as discussed in the *Greenburg* case. The nature of what constitutes 'storm warnings' depends upon the plaintiffs' theory of fraud. *Greenburg*, 359 F.Supp. at 683.  In this case, plaintiffs' theory of fraud involves misrepresentations of likelihood of success, wealth and  cost estimates to increase amounts invested to make money drilling dry wells.   Information, such as the spreadsheet prepared by Lois Nonneman, suggesting that such representations were not accurate, is sufficient to cause the two-year statute of limitations to commence.

Given the admission in testimony of plaintiffs' awareness of the low drilling success rate as early as 2002, there is no genuine issue of material fact on the issue of notice and therefore, the motion for judgment should have been granted dismissing the federal securities fraud claims. The clarity of the evidence on this point is reflected in the district court's observation, when considering defendants' motion for judgment as a matter of law prior to submission to the jury: "There has been sufficient testimony in my mind for Mr. Nolfi and Ms. Nonneman. Indeed they did have the ability either directly or through the auspices of counsel before the year 2004 to be made well aware of any possible claims." RE.155, p.1141. Nonetheless, the district court denied the motions on the grounds that plaintiffs' attorney, Mr. Nolfi testified that he was not aware that the trust may have claims for violations of federal or state securities laws until litigation in 2005. RE.197, p.8. The district court also based its ruling on the reasoning that knowledge of past drilling results did not address all of plaintiffs' securities fraud theories. RE.197, p.8.

The inquiry notice standard does not require that plaintiffs fully learn of the alleged wrongdoing, they need only a low level of awareness for the statute of limitations to commence running. Plaintiffs' awareness of information contradicting representations of likelihood of success and claims of wealth are sufficient to put plaintiffs on inquiry notice of those claims, but also triggers a duty

to investigate plaintiffs' theories of fraud that defendants were running a dry hole factory and making money by overstating expenses to drive-up the costs of the investment. In the first instance, evidence of a high dry-hole rate contrary to alleged representations of likelihood of success, is closely connected to this theory. Moreover, once plaintiffs have a duty to investigate by reason of storm warnings, the limitations period will deem to have been run when a reasonably diligent investigation would have discovered the fraud. Plaintiffs were general partners and joint venturers, and as such, had the power to obtain information regarding the details of the investments. As a result, the district court's observation was correct that plaintiffs either directly or through counsel could have been well aware of their claims before the year 2004. Accordingly, the district court erred in denying defendants' motion for judgment as a matter of law dismissing plaintiffs' federal securities fraud claims by reason of the statute of limitations.

### C.    Plaintiffs did not Present Sufficient Evidence of Justifiable Reliance.

Plaintiffs must show justifiable reliance in order to establish a §10(b) claim. *Wright v. National Warranty Co.*, 953 F.2d 256, 261 (6th Cir.1992). A recklessness standard is to be used in determining whether the plaintiff justifiably relied on a misrepresentation or omission. *Molecular Technology Corp. v. Valentine*, 925 F.2d 910, 918 (6th Cir.1991), citing *Zobrist v. Coal-X, Inc*., 708 F.2d 1511, 1516 (10th Cir. 1983), which defined recklessness in this context as

meaning that "… plaintiff's conduct rises to a level of culpable conduct comparable to that of defendants …"

While there is no "*per se* rule foreclosing the possibility of recovery for deceit in all situations where an allegedly injured party has signed a non-reliance clause," this court will "accord an appropriate weight to evidence of the signing of such a clause in the entire context of the alleged fraud." *Brown v. Earthboard Sports USA, Inc*., 481 F.3d 901, 921 (6th Cir. 2007).  The *Brown* court cited a number of cases dismissing §10(b) claims by reason of non-reliance clauses after undertaking a contextual analysis. *Id*. p.921, citing *Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc.*, 343 F.3d 189, 195 (2d Cir.2003); *Rissman v. Rissman*, 213 F.3d 381, 383-384 (7th Cir. 2000); *Jackvony v. RIHT Financial Corp*., 873 F.2d 411 (1st Cir.1989); *One-O-One Enterprises, Inc. v. Caruso*, 848 F.2d 1283 (D.C. Cir.1988).

Plaintiffs' §10(b) claims arising out of the joint venture agreements should have been dismissed under Rule 50 by reason of the agreements' non-reliance clauses.  Plaintiffs' claims involve non-disclosure of cost estimates. (Plaintiffs only presented evidence of a handful of estimates for joint ventures relevant to the fraud claims, which were actually received, and defendants presented testimony that joint venture prospectuses were not generally provided.    RE.138, pp.164-65; RE.157, pp.37-41 (Pl.73, 84, 88, 90, 92, 133, NON bates-stamp indicates

documents from Nonneman's files.)  The joint venture agreements are distinct

from the partnership agreements, which involved cost estimates in prospectuses,

which were referenced in the agreements.

The joint venture agreements contain representations disclaiming reliance on

extra-contractual representations:

> "The undersigned hereby represents and warrants … that…he has not
> relied upon any representation or warranty not contained in this
> agreement in purchasing the working interest."  Appx.pp.11-12, 21-
> 22, Def.1024, pp.12-13, 386-87.

Plaintiffs also represented that he "has received all the information which he

feels is necessary to participate in this Joint Venture."  Appx.pp.9, 19, Def.1024,

pp.10, 384.

The *Rissman* case, cited by this court in *Brown*, 481 F.3d at 921, involved a

sale of securities with a similar contractual warranty that the agreement was

entered "without reliance upon any statement or representation by Purchaser …

except as set forth herein …"  *Rissman*, 21 F.3d at 383. *Rissman* observed that a

non-reliance clause "… ensures that both the transaction and any subsequent

litigation proceed on the basis of the parties' writings, which are less subject to the

vagaries of memory and the risks of fabrication."  *Id.,* p.384.  *Rissman* pointed out

that negotiation could have resolved the issue, but that different contractual

allocations of risk may have involved changes in the agreed payment. *Id*., p.385.

*Rissman* concluded that allowing the extent of reliance to be a jury question, despite the warranty of non-reliance, would nullify such clause. *Id.,* p.385.

In the present case, plaintiffs' principal, Frederick Nonneman, was a highly sophisticated business owner, who had broad experience as an oil and gas investor, to the extent that he had offered to purchase $2,000,000 of stock in Ohio Kentucky. Instead of buying stock, he systematically purchased interests in oil well joint venture agreements over many years. The joint venture agreements all called for a fixed price for an interest in a joint venture, with the funds being used to pay a fixed price for a turnkey drilling program. There is no evidence that Nonneman was relying on cost estimates and his daughter acknowledged that she just got a "price to invest" and wasn't relying on detailed cost estimates.  RE.138, pp.164-165. The main motivator was the immediate tax deduction available for pre-paid intangible drilling and development costs.     RE.138, pp.144-146; Appx.p.6, Def.1023, p.55.

It was only after Nonneman was out of the picture, that his successors, disappointed by the drilling results, raised the issue of cost estimates.  At this point, William Griffith, Ohio Kentucky's principal and the only person with knowledge of cost estimating was deceased.  Plaintiffs then obtained Ohio Kentucky's out-of-pocket cost records, and without providing allowance for Ohio Kentucky's

overhead, cited these records as evidence of misrepresentation or fraudulent non-disclosure.

Plaintiffs' non-disclosure theory amounts to a claim that defendants engaged in fraud by failing to disclose its actual costs, overhead and profit margin. This theory is in a different class than plaintiffs' theory of misrepresentation by false cost estimates, which is only possible in the handful of instances where cost estimates were actually provided. The scope of plaintiffs' theory is extraordinary since, if actionable, it could justify fraud claims in virtually every transaction where a party has failed to disclose its underlying profit margin.

The joint venture agreements and their context do not remotely justify such a result. Plaintiffs contracted for an interest in a joint venture, in which one of the joint venturers agreed to provide drilling services at a fixed cost. Defendants obtained plaintiffs' warranty that they were not relying on any representation other than was specified.  Defendants undertook the risks of drilling cost overruns, but did not undertake other unspecified risks, with plaintiffs' explicit agreement.  If plaintiffs wished to specify defendants' profit margin, they could have negotiated for that.

The *Emergent Capital* case, also cited by *Brown*, made the following applicable point:

"where … a party has been put on notice of the existence of material facts which have not been documented and he nevertheless proceeds

with a transaction without securing the available documentation or inserting appropriate language in the agreement for his protection, he may truly be said to have willingly assumed the business risk that the facts may not be as represented. Succinctly put, a party will not be heard to complain that he has been defrauded when it is his own evident lack of due care which is responsible for his predicament."

*Emergent Capital,* 343 F.2d at 195, citing *Rodas v. Manitaras*, 159 A.D.2d 341, 343, 552 N.Y.S. 2d 618 (1st Dep't 1990)

A disclaimer of liability is distinct from a disclaimer of reliance. "The former is a direct attempt to avoid legal consequences; the latter is an attempt to establish a fact." *Agristor Leasing v. Saylor*, 803 F.2d 1402, 1410 (6th Cir. 1986) (J. Boggs, concurring). The disclaimer of reliance plays an important role in determining what the parties have agreed to. Justice Boggs explained that "a contractual disclaimer may be competent evidence on the issue of whether the plaintiff had relied upon alleged misrepresentations." *Id*., p.1410. A contrary rule would permit a person "to enter a commercial bargain" defining what he "did and did not rely upon in entering into the agreement and then be relieved of any responsibility for that term when it later suited him." *Id*., p.1410.

Justice Boggs illustrated the significance of this principle by observing that if a plaintiff had paused before signing a contract and demanded a term that he relied on all representations by a salesman or contained in promotional literature, such transaction would not have gone forward unimpeded. He further explained that "the fundamental doctrine of Contracts that honors lawful, consensual,

33

informed agreements" "should [not] disappear in the presence of an allegation of fraudulent representation." *Id.*, p.1410. He concluded that the fact that plaintiffs read and understood the contract coupled with the fact that "the contract contained a valid disclaimer of reliance, may be enough, in the absence of some competent evidence to the contrary, to justify granting a motion for judgment notwithstanding the verdict on this issue [of fraudulent misrepresentation]" *Id.*, p.1410.

The contextual test for non-reliance clauses recognized in *Brown* is consistent with Justice Boggs analysis. If there is no competent evidence to the contrary, a non-reliance clause is determinative on the issue of justifiable reliance, since such clause establishes as a matter of fact that plaintiffs agreed that they did not rely on an alleged misrepresentation or non-disclosed information. In the present case there is no evidence demonstrating that they did not agree to such non-reliance. Accordingly, the district court erred in denying the motion for judgment on this issue.

## V.    The Jury Instructions Incorrectly Stated the Law Regarding Presumption of Reliance and Damages for the Federal Securities Fraud Claims, and the Repose Period for the State Securities Claims.

### A.    Standard of Review.

The correctness of jury instructions is a matter of law reviewed *de novo*, while refusal to give a requested instruction is reviewed for abuse of discretion. *Micrel, Inc. v. TRW, Inc.*, 486 F.3d 866, 881 (6th Cir. 2007). "Jury instructions are

reviewed as a whole to determine whether they fairly and adequately present the issues and the applicable law…" *Id.*, pp.880-881.

**B. The District Court Erred by Instructing the Jury that Reliance may be Presumed for §10(b) Omission Claims Where There was no Duty to Disclose.**

The district court erred in instructing the jury over defendants' objection on plaintiffs' §10(b) claims that "Where a claim is based upon an omission, positive proof of reliance is not a prerequisite to recovery. … In the case of the omission of a material fact, the element of reliance by the plaintiffs may be presumed." RE.162, pp.1188, 1299. The Supreme Court has made clear that reliance is an essential element of a §10(b) claim. *Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S.148, 128 S.Ct. 761, 769 (2008); *Basic, Inc. v. Levinson*, 485 U.S. 224, 243, 108 S.Ct. 978, 989 (1988). The *Stoneridge* court explained that the importance of the element of reliance is that it provides the "requisite causal connection between the defendants' misrepresentation and the plaintiffs' injury." *Id.*, p.769. The Supreme Court has applied a presumption of reliance in §10(b) claims in two limited circumstances:

> "We have found a rebuttable presumption of reliance in two different circumstances. First, if there is an omission of a material fact by one with the duty to disclose, the investor to whom the duty was owed need not provide specific proof of reliance. *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. at 153-154, 92 S.Ct. 1456. Second, under the fraud-on-the-market doctrine, reliance is presumed when the statements at issue become public."

*Id.*, p.769.

The present case involves the issue of whether the *Ute* presumption is applicable.  (The fraud-on-the-market theory was not raised because the present case involves private sales.) In explaining the *Ute* presumption, the *Stoneridge* court stated "… if there is an omission of a material fact by one with the duty to disclose, the investor to whom the duty was owed need not provide specific proof of reliance."  *Id.*, p.769.  The *Basic* court explained the *Ute* presumption as dispensing "… with a requirement of positive proof of reliance, where a duty to disclose material information had been breached …"  *Basic*, 485 U.S. at 243, 108 S.Ct. 978.

This court has recently held that there is no general duty on the part of an issuer to provide the public with all material information.  *J & R Marketing*, *SEP*., 549 F.3d at 397 ("We are not authorized to impose a wide ranging duty to disclose anything that a person can allege was non-public, material information.")

The holding in *J & R Marketing* comports with the principle described in *Chiarella v. United States*, 445 U.S. 222, 234-235, 100 S.Ct. 1108 (1980) set forth as follows:

> "Section 10(b) is aptly described as a catch-all provision, but what it catches must be fraud.  When an allegation of fraud is based upon non-disclosure, there can be no fraud absent a duty to speak.  We hold that a duty to disclose under §10(b) does not arise from the mere possession of non-public market information.  The contrary result is without support in the legislative history of § 10(b) and will be

inconsistent with the careful plan that Congress has enacted for regulation of the securities markets."

The *Ute* presumption may be applied only to non-disclosure claims when a duty to disclose has arisen.  The *Chiarella* court explained that "… the duty to disclose arises when one party has information 'that the other [party] is entitled to know because of a fiduciary or similar relation of trust and confidence between them.'" *Id*., p.228.

As indicated by *Stoneridge* and *Basic*, the *Ute* presumption is only available where there is an omission of a material fact by one with a duty to disclose.  As explained in *Chiarella*, the defendant in the *Ute* case had assumed a duty to act on behalf of plaintiffs:

> "The Court recognized that no duty of disclosure would exist if the bank had merely acted as a transfer agent. *But, the bank also had assumed a duty to act on behalf of the shareholders, and the Indian sellers had relied upon its personnel when they sold their stock.* 406 U.S., at 152, 92 S.Ct. at 1471.  Because these officers of the bank were charged with a responsibility to the shareholders, they could not act as market makers inducing the Indians to sell their stock without disclosing the existence of the more favorable non-indian market. *Id*. at 152-153, (92 S.Ct. at 1471-1472)."

*Id*., p.230.

The rationale for the *Ute* presumption was described by the Fifth Circuit Court of Appeals as follows:

> "The logic of *Affiliated Ute* is that, where a plaintiff is entitled to rely on the disclosures of someone who owes him a duty, requiring him to prove 'how he would have acted if omitted material information had

been disclosed' is unfair. *Basic*, 485 U.S. at 245, 108 S.Ct. 978.  It is natural to expect a plaintiff to rely on the candor of one who owes him a duty of disclosure, and it is fair to force one who breached his duty to prove that the plaintiff did not so rely. Here, however, where the plaintiffs had no expectation that the banks would provide them with information, there is no reason to expect that the plaintiffs were relying on their candor. Accordingly, it is only sensible to put plaintiffs to their proof that they individually relied on the banks' omissions."

*Regents of the University of California v. Credit Suisse First Boston (USA), Inc.* 482 F.3d 373, 385 (5th Cir. 2007).

In the present case, plaintiffs failed to allege that defendants owed a duty to disclose in connection with the subject transactions.  The subject purchases were arms-length transactions between two experienced businessmen.  No fiduciary or other similar relation of trust and confidence was alleged with respect to the subject transactions.  Moreover, even if such a fiduciary relationship had been alleged, it would have been the subject of factual dispute, which would preclude the court from simply assuming the existence of such a relationship for purposes of applying the *Ute* presumption in the jury instructions.

The district court erred in instructing the jury that it may presume that plaintiffs relied on omissions, without a determination that there was a duty to disclose.  Such reliance is an essential element in §10(b) claims. Accordingly, the §10(b) judgment should be reversed.

### C.    The District Court Erred by Instructing the Jury that the Measure of Damages for §10(b) Claims was the Purchase Price.

The district court erred in instructing the jury over defendants' objection that "I will now instruct you on the proper measure of damages. …   Rescission or rescissory damages may be awarded against the seller or broker of the securities to restore the plaintiffs to the position they would have been in had the defendants not misrepresented or omitted material facts.  Rescission cancels the original purchase and allows the plaintiffs to recover the price paid, plus interest."  RE.162, pp.1191, 1299.  The district court abused its discretion by refusing to provide the instruction requested by defendants as follows:

> "The correct measure of actual damages is the drop in value, if any, of plaintiffs' investment which was caused by a misrepresentation or omission by defendants.  It is not enough to show that a misstatement or omission induced plaintiffs to buy securities at a price less favorable than they had been misled into believing. Rather, they must show that the misstated or omitted facts were a substantial factor in otherwise causing a drop in value in plaintiffs' partnership or joint venture interest."  RE.149, p.16.

In *Dura Pharmaceuticals, Inc. v. Broudo,* 544 U.S. 336, 346, 125 S.Ct. 1627, 1633 (2005), the Supreme Court held that recovery for §10(b) claims must be consistent with the PSLRA's requirement that plaintiffs prove that defendants misrepresentation "caused the loss for which the plaintiffs seek to recover."  15 U.S.C. §78j-4(b)(4).  The *Dura* court pointed out that §10(b) actions were made available by statute "not to provide investors with broad insurance against market losses, but to protect them against those economic losses that misrepresentations actually cause."  *Id*., p.1633.  The Dura court explained that losses on securities

39

transactions … "may reflect, not the earlier misrepresentation, but changed economic circumstances, changed investor expectations, new industry–specific or firm-specific facts, conditions or other events...." *Id*. p.1632.

In *Stoneridge,* 552 U.S. 1 at 164, 128 S.Ct. at 772, the Supreme Court explained that "[t]he §10(b) private cause of action is a judicial construct" and that "it is settled that there is an implied cause of action only if the underlying statute can be interpreted to disclose the intent to create one…" The *Stoneridge* court further noted that the PSLRA "… imposed … a loss causation requirement upon 'any private action' arising from the Securities Exchange Act," and that it was clear that the PSLRA requirements touch upon the implied right of action…" under §10(b). *Id*., p.165. In *Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Dabit,* 547 U.S. 71, 126 S.Ct. 1503 (2006), the Supreme Court observed that the PSLRA was "captioned 'Reduction of Abusive Litigation' and that it "represents Congress' effort to curb … perceived abuses" by, among other things "provisions [which] limit recoverable damages." *Id.,* p.81.

Prior to the PSLRA's effective date of December 22, 1995, the Supreme Court addressed the measure of recovery under §10(b) in *Randall v. Loftsgaarden*, 478 U.S. 647, 106 S.Ct. 3143 (1986), and *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 92 S.Ct. 1456 (1972). The *Randall* and *Ute* courts held that "ordinarily the correct measure of damages under §28 of the Act, 15 U.S.C.

§78b(a), is the difference between the fair value of all that the [plaintiff] received and the fair value of what he would have received had there been no fraudulent conduct" *Randall*, 478 U.S. at 661-662.  The *Randall* court … noted that "[c]ourts have also generally applied this 'out-of-pocket' measure of damages in §10(b) cases involving fraud by a seller of securities." *Id*., p.662.

The *Randall* court also stated that "[t]he issue whether and under what circumstances rescission or a rescissory measure of damages is available under §10(b) is an unsettled one." *Id*., p.661.  However, the *Randall* court went on to observe that "there is authority for allowing the §10(b) plaintiff, at least in some circumstances, to choose between undoing the bargain (when events since the transactions have not made rescission impossible) or holding the defendant to the bargain by requiring him to pay [out-of-pocket] damages." *Id*., p.662. Nonetheless, the Court reached no conclusion on this point since the parties did not dispute that rescission or rescissory damages may sometimes be appropriate under §10(b). As a result, the Court stated that "[w]e shall therefore assume, *arguendo*, that a rescissory recovery may sometimes be proper on a §10(b) claim, and that this is such a case." *Id*., p.662.

The apparent reason why the defendants in *Randall*, did not dispute rescissory recovery under §10(b) of the Securities Exchange Act of 1934, was the fact that plaintiff had also obtained an equivalent award under §12(2) of the

Securities Act of 1933, which statutorily provided for rescissory recovery.  *Id*.,

p.655. In any event, the *Randall* court assumed for purposes of the case, but did not

hold, that rescissory recovery may be available under §10(b).  In its conclusion, the

*Randall* court emphasized the limited nature of its decision." We also have no

occasion in this case to decide whether, assuming that a rescissory recovery may

sometimes be proper under §10(b), plaintiffs in such cases should invariably be

free to elect a rescissory measure of damages rather than out-of-pocket damages.

… In this case, a rescissory measure of damages was determined to be proper, and

respondents have abandoned their initial challenge to that ruling." *Id*., pp.666-67.

The federal courts of appeal have addressed whether rescissory damages are

appropriate on a number of occasions.  Rescissory recovery was deemed

inappropriate to the extent it allowed recovery of losses unrelated to fraud in

*Huddleston v. Herman & Maclean*, 640 F.2d 534, 555 (5th Cir.1981):

> "[t]he rescissional measure permits the defrauded securities buyer to
> place upon the defendant the burden of any decline in the value of the
> securities between the date of purchase and the date of sale even
> though only a portion of that decline may have been proximately
> caused by the defendant's wrong. … Under these circumstances, the
> rescissional measure is unjust insofar as it compensates an investor for
> the nonspecific risks which he assumes by entering the market."

In *Hoxworth v. Blinder, Robinson & Co., Inc.,* 903 F.2d 186, 203 (3d

Cir.1990), the Third Circuit Court of Appeals reached the same conclusion:

> Although the Supreme Court has reserved the question whether a
> rescissionary measure of damages is ever appropriate for defrauded

buyers under rule 10b-5, *see id*., this court has expressed clear disapproval of a damage theory that would insure defrauded buyers against downside market risk unrelated to the fraud, *see Sharp v. Coopers & Lybrand*, 649 F.2d 175, 190 (3d cir.1981), *cert. denied*, 455 U.S. 938, 102 S.Ct. 1427, 71 L.Ed.2d 648 (1982), which is exactly what a rescissionary measure is designed to accomplish."

The Eleventh Circuit Court of Appeals reversed a §10(b) judgment based on a rescissory measure of damages because the district court did not require the plaintiff to establish that his loss was caused by defendant's omissions. *Rousseff v. E.F. Hutton Company, Inc*., 843 F.2d 1326, 1329, FN3 (11th Cir.1988) ("[R]ecission may be unjust where the decline was caused largely by forces unrelated to the defendant's fraud.)

This court addressed rescissory damages for §10(b) claims in *Stone v. Kirk*, 8 F.3d 1079 (6th Cir.1993), noting that while "the correct measure of damages" in §10(b) cases is "generally held to be an 'out-of-pocket' measure … in some circumstances, at least, it appears that the [§10(b)] plaintiff … may elect to obtain rescissory damages." *Id*., p.1092. The *Stone* court went on to cite the standard for rescissory damages under §12(2) of the Securities Act of 1933, even though the case only involved a §10(b) claim. *Id*., p.1092. The court concluded that rescissory damages would be available without explanation as to why they were appropriate.

Prior to the *Dura* case, "[t]he question of the availability of the rescission remedy in federal securities actions ha[d] not been definitively resolved." *Rousseff*,

843 F.2d at 1329.  However, the PSLRA and the *Dura* decision now preclude such remedy.  "Given the nature of the loss causation requirement after *Dura*, it stands to reason that private plaintiffs should no longer be permitted to recover rescissory damages."  Burch, Reassessing Damages in Securities Fraud Class Actions (2007), 66 Md. L. Rev. 348, 366, FN91.

Efforts to reconcile rescissory damages with the PSLRA's loss causation requirement leads only to a damages theory, which is equivalent to the out-of-pocket measure. If rescissory damages are only available in circumstances where loss of the entire investment is attributable to a misrepresentation, then such damages provide no recovery different than out-of-pocket damages.

In the present case, defendants presented no evidence that economic losses were caused by misrepresentations or omissions. Any losses to plaintiffs arose from the results of drilling programs, an inherently high risk activity. The district court erred by instructing the jury that the measure of damages was price plus interest, without regard to whether such loss was attributable to a misrepresentation or omission. The district court also erred by refusing to give the instruction proposed by defendants setting forth the out-of-pocket measure of damages.

### D. The District Court Erred by Instructing the Jury that Tax Benefits Should Not Be Deducted from Damages.

The *Randall* court specifically cautioned that "… we do not consider whether courts may ever refuse to allow a rescissory recovery under §10(b) where

the 'premium' for expected tax benefits represented a large portion of the purchase price, in which event the out-of-pocket measure might yield a significantly smaller recovery." *Randall*, 478 U.S. at 666-667, 106 S.Ct. at 3155.

Justice Blackmun, concurring in the *Randall* judgment, pointed out that tax benefits could be deductible under the out-of-pocket measure of damages, where the value of the underlying investment was misrepresented, but not the value of the tax benefits. *Id*., p.669. He explained that "… recovery should be reduced by the market value of the economic benefits the plaintiff was promised and actually obtained, which includes the ability to shelter a particular amount of income." *Id*., p.670.

In the present case, evidence was presented that plaintiffs received the value of promised tax benefits. RE.155, pp.1089-1090; Appx.pp.72-78, Def.1041, pp.1-4. Therefore the district court erred by instructing the jury over defendants' objection not to deduct tax benefits from damages. RE.154; RE. 162, p.1192.

**E.    The District Court Erred by Failing to Instruct the Jury Regarding the Statute of Repose Applicable to Plaintiffs' State Securities Claims.**

The district court erred by denying defendants' request to instruct the jury that Fencorp's state securities claims may not be brought more than five years from date of sale. Fencorp brought contract claims for transactions from 2000 through 2003. Fencorp also brought state securities claims for the same transactions, but

the court dismissed the state securities claims for transactions prior to March 6, 2001, by reason of the statute of repose.   RE.78, p.9.

In order to inform the jury which transactions were the subject of the state securities claims, defendants requested an instruction that such claims may not be brought "more than five years from the date of such sale or contract for sale, whichever is the shorter period."    RE.149, pp.20, 23, 26.   Defendants also requested interrogatories specifying which transactions were the subject of the securities claims.  RE.103, pp.12, 13, 15.

Fencorp objected to defendants requested instruction regarding the statute of repose.  RE.149, p.20.  The court sustained Fencorp's objection and declined to provide the requested instruction.   RE.162, pp.1197, 1201.

The court also declined to submit requested interrogatories identifying which transactions were the subject of the securities claims as opposed to the contract claim.    RE.76. The court ordered the parties to submit proposed interrogatories without the identification of specific transactions.  Defendants maintained their objection to the failure to identify which transactions related to which claims. RE.162, p.1298.

As a result, the jury was not instructed that transactions outside the statute of repose were not the subject of Fencorp's state securities claims. The jury's interrogatory answers demonstrate that they included transactions outside the

statute of repose in awarding damages.  This is evident from the jury's finding of damages on the state common law fraud claim in the amount of $1,404,769. RE.163, p.10, No.4-E.  Fencorp admits that the total amount of transactions within the statute of repose, if it is five years, is $1,012,835.50.  RE.177, pp.1-2.

The district court erred in denying defendants request to instruct the jury on the statute of repose applicable to Fencorp's state securities claims.  The court's judgment for Fencorp was based on damages awarded for Fencorp's common law fraud claim which is subject to the O.R.C. 1707.43 statute of repose because it arose out of sales of alleged securities. *Goldberg v. Cohn*, 2002-Ohio-3012 at ¶15. The court's judgment for Fencorp was based on the largest total amount of damages found by the jury for any single claim.  The jury found that the largest total damages for any single claim was $847,858.    RE.163, p.16. The court determined that the largest amount of damages was $1,404,769 found by the jury in connection with the common law fraud claim and awarded judgment in that amount.  RE.172, p.1325;  RE.174.  Subsequently the court reduced that amount to $1,012,835.50 in response to defendants' motion to amend judgment.    RE.197, pp.5, 15.  The district court's error in refusing to instruct the jury on the statute of repose applicable to the common law fraud claim was clearly prejudicial.  It is undisputed that the jury awarded damages based on transactions barred by the statute of repose.  Reducing the judgment to a lower amount is an exercise in

speculation, since there is no finding that demonstrates which transactions were the bases of the jury's damages findings.  Accordingly, since the court's judgment was based on the damages awarded on the common law fraud claim, it should be reversed.

## VI. The District Court Erred in Entering Judgment on Fencorp's State Claims on a Verdict Inconsistent with the Jury's Interrogatory Answers.

### A. Standard of Review.

This court has held that "a district court's interpretation of a verdict rendered pursuant to [Rule] 49 is reviewed for abuse of discretion." *Radvansky v. City of Olmsted Falls*, 496 F.3d 609, 618 (6th Cir.2007), citing *Cent. On Line Data Sys., Inc. v. Filene Corp.*, Nos. 95-1016, 95-1054, 1996 WL 483031 at *11 (6th Cir. Aug. 23, 1996) and *Portage II v. Bryant Petroleum Corp.*, 899 F.2d 1514, 1524 (6th Cir. 1990), both of which involved an issue of whether jury interrogatory answers consistent with each other were inconsistent with the verdict, a circumstance covered by F.R.C.P. 49(b)(3).  However, this court has reviewed de novo, issues arising from claims that jury answers were inconsistent with each other as well as with the verdict, a circumstance covered by F.R.C.P. 49(b)(4). *Bahamas Agricultural Industries Limited v. Riley Stoker Corporation*, 526 F.2d 1174, 1183 (6th Cir.1975). This court reviews the grant or denial of a F.R.C.P. 59(e) motion to amend a judgment/new trial for abuse of discretion. *Betts v. Costco Wholesale Corporation*, 558 F.3d 461, 467 (6th Cir.2009).  A district court abuses

its discretion when it relies on clearly erroneous findings of fact, or when it improperly applies the law or uses an erroneous legal standard. *Id.*, p.467.

### B. The District Court Erred in Entering Judgment on the Verdict and Interrogatories.

The district court's judgment on Fencorp's claims should be reversed because it was entered in violation of Rule 49 (b)(4), which provides:

> "***Answers Inconsistent with Each Other and the Verdict.*** When the answers are inconsistent with each other and one or more is also inconsistent with the general verdict, judgment must not be entered; instead, the court must direct the jury to further consider its answers and verdict, or must order a new trial."

As discussed above, the jury reached a verdict of $849,858 on Fencorp's claims, finding that it was the largest total amount of damages for any single Fencorp claim.    RE.163, p.16.  The district court changed the verdict to $1,404,769, which was the amount of damages found by the jury for the common law fraud claim.   RE.163, p.10, No.4-E.   The court denied defendants request that the case be resubmitted to the jury, which had not yet been released, to resolve the conflicts between the interrogatories and the verdict.   RE.172, pp.1324-25.

The jury found that responsibility for fraud on Fencorp was allocated 10% ($140,476) to defendant Carol Campbell, 50% ($707,382) to defendant Ohio Kentucky, and 40% to William Griffith.   RE.163, pp.2, 4, Nos.1-C, 1-I.  The sum of the amounts allocated to defendants Carol Campbell and Ohio Kentucky was the basis for the verdict of $847,858.  The amount of $1,404,476 would be 100% of

the damages for fraud on Fencorp, as reflected by the fact that this sum is 10 times the 10% amount attributed to Carol Campbell and 2 times the 50% amount attributed to Ohio Kentucky.

The jury's verdict that $847,858 is the largest total amount of damages is inconsistent with the jury's finding that damages for the common law fraud was $1,404,769.  In addition, the amount of damages found in jury interrogatory no. 1-I ($847,858) is inconsistent with the answer to interrogatory no. 1-G.   RE.178, p.4. In 1-G, the jury was instructed that plaintiffs were entitled to recover the purchase price for the investments which were the subject of the fraud.  The jury found the purchase price for the Fencorp investments was $3,591,605.   RE.163, p.3, No.1-G. Plaintiffs have acknowledged in a memorandum to the court that the answer to interrogatory 1-G is inconsistent with the interrogatories finding damages. RE.178, p.4 ("[T]he jury failed to retain consistency with its previous findings.")

As a result, it is undisputed that the jury's interrogatory answers were inconsistent with each other and with the verdict.  The law applicable to such circumstances is clear in this circuit:

> "The standards for application of Rule 49(b) are well settled.  If answers to special interrogatories are inconsistent with each other and one or more of the answers is inconsistent with the general verdict, the trial court has no authority to enter judgment but must return the jury for further deliberation or order a new trial.  ***Bahamas Agr. Industries, Ltd. v. Riley Stoker Corp., 526 F.2d 1174, 1183 (6th Cir.1975).***"

*Waggoner v. Mosti,* 792 F.2d 595, 596-7 (6th Cir.1986)

The district court has no authority, under the circumstances, to enter judgment on the Fencorp claims. The district court declined the option of returning the case to the jury for further deliberation, overruling defendants request for resubmission. RE.172, pp.1324-1325. The district court did not take the only other available option of ordering a new trial. Accordingly, the district court's entry of judgment on the verdict on the Fencorp claim was unauthorized and should be reversed.

### C.    The District Court Erred in Denying Defendants Motion to Alter or Amend its Judgment or for a New Trial.

Defendants moved to amend the judgment or for a new trial, pursuant to F.R.C.P. 59(e), on the grounds that the underlying verdict was based on transactions outside the statute of repose. RE.166.

Plaintiffs admit that the verdict exceeded the amount of transactions within the statute of repose. RE.177, pp.1-2. The court reduced the amount of the judgment from $1,404,769 to $1,012,835.50, on the grounds that the latter reflected the total amount of transactions within the statute of repose. RE.197, pp.5, 15. However, this reasoning involves speculation regarding the jury's thinking, since there were no interrogatory answers clearly defining intent by the jury to award the entire amount of the transactions as damages. RE.163. If anything, the interrogatories suggest that the jury intended to only award damages

based on a calculation of overstatement of expenses for the Fencorp programs. Plaintiffs' expert testified that the total overstatement of estimate of costs for the Fencorp programs was $1,404,769, which was the exact amount of the total of damages awarded by the jury for the common law fraud claim. Appx.p.77, Pl. 356-38. The jury also found that the total purchase price paid for all of the Fencorp programs was $3,591,605. RE.163, p.3, No.1-G. These findings demonstrate that the jury did not intend to award the full transaction price as damages. Nevertheless, the district court amended the judgment to $1,012,835.50 because it was the "total value of all Fencorp investments in OKO programs within the five-year statute of repose." RE.197, p.5.

While there was evidence that the total of Fencorp investments within the statute of repose was $1,012,835.50, there were no findings showing that the jury intended to award the full transaction prices as damages. The district court's determination that the amounts of the judgment should be $1,012,835.50, was based on unfounded speculation as to the jury's intent. Therefore, the district court erred in denying defendants' motion to amend/new trial, entering judgment in the amount of $1,012,835.50. Accordingly, this judgment should be reversed.

## VII. The District Court Erred in Imposing Discovery Sanctions by Granting Judgment Against Defendants on Their Federal Preemption Defense to Fencorp's State Securities Non-Registration Claims.

### A.    Standard of Review.

"A district court's decision to invoke F.R.C.P. 37 sanctions is reviewed by this court for an abuse of discretion." *Beil v. Lakewood Engineering and Manufacturing Company*, 15 F.3d 546, 551 (6th Cir.1994). An erroneous application of F.R.C.P. 37 is an abuse of discretion. *Id.*, p.552. Four factors should be considered in reviewing a sanction leading to dismissal or default judgment: 1) whether a party's failure to provide discovery is in bad faith; 2) prejudice to the opposing party; 3) prior warning of potential dismissal; and 4) whether less drastic sanctions were considered. *Bass v. Jostens, Inc*., 71 F.3d 237, 241 (6th Cir.1995).

### B.    Drastic Discovery Sanction Violates F.R.C.P. 37 and Case Law.

The district court erred in imposing discovery sanctions by deeming established as fact that defendants engaged in a general solicitation, and thereby precluding defendants' preemption defense.   RE.132, p.7.

Defendants claimed that plaintiffs' state securities non-registration claims were preempted by the National Securities Market Improvement Act of 1996 ("NSMIA").  The NSMIA preempts state registration laws applying to "covered securities," which are exempt from registration pursuant to regulations issued under §4(2) of the 1933 Securities Act. Defendants claimed that the Fencorp transactions were exempt from registration under Rule 506 of S. E. C. Regulation D, issued under §4(2).  The district court denied cross-summary judgment motions

on this issue on the grounds that there was a factual issue whether defendants engaged in a general solicitation, which could render Rule 506 inapplicable and preclude preemption.  REs.78 and 79.

In discovery, plaintiffs requested all lists or documents used by defendants to identify and contact new investors.    RE.115-2, p.2, No.20.  Defendants provided responsive documents but objected to this request to the extent it related to transactions which were not the subject of claims in this case.  RE.115-3, p.4, Nos.20-30.  Plaintiffs brought this discovery dispute to the court by letter dated March 13, 2008 pursuant to L.R. 37.1.  The court held a telephone conference on March 16, 2008 and defendants provided their position by letter dated March 24, 2008 and March 31, 2008.   RE.132, p.1.  Defendants acknowledged agreement to provide documents regarding programs at issue in this case, from 2000-2003, but maintained their objection to documents regarding programs not at issue.   RE.95, p.11.

The remaining issues were not further addressed by the court until a telephone conference on May 16, 2008, just prior to trial scheduled May 29, 2008. The court stated that he thought post-2004 documents should be discoverable. RE.95, p.15.  However, he later stated that since there wasn't "full knowledge of availability, and what is out there," he would place the pertinent witness under oath

to "have an inquiry made as to records availability" "so we can ferret this out in lieu of going through F.R.C.P. 37 motion and sanction request."   RE.95, p.20.

The court then held a hearing on May 19, 2008, where OKO's general manager testified that lead cards for potential investors for the subject programs dated 2000-2003 had been disposed of in early 2004 prior to the subject lawsuits. RE.116, pp.23, 36.  He was concerned that retaining such information would risk inadvertent violations of the FTC's new no-call rules.    RE.116, p.23.   He explained that OKO had current lead cards for programs after 2004, which were unrelated to the transactions in this case.   RE.116, p.44.  He also explained that OKO had index cards, different from lead cards, for current investors, which may include information from the 2000-2003 period unrelated to the transactions in this case.    RE.116, pp.12, 22, 44.  OKO's counsel emphasized that the documents, which were the subject of the discovery dispute, were available to be produced. RE.116, pp.61-62.

On May 28, 2008, the day before trial, the court ordered discovery sanctions under F.R.C.P. 37(1)(b) finding that defendants engaged in a general solicitation, thereby precluding their preemption defense.   RE.132, p.7.  The order indicated that the matter came on May 16, 2008 for a telephone conference pursuant to L.R. 37.1, which was adjourned to hear from defendants' general manager on May 19, 2008. The court reasoned that documents for 2001-2003 existed, citing the general

manager's testimony regarding lead cards, and subsequent testimony regarding index cards, which might contain information from 2001-2003.   RE.132, pp.5-6.

Defendants moved for reconsideration, on the grounds that L.R. 37.1 was a discovery dispute rule, and that there had been no motion to compel, no discovery order, and no violation of a discovery order justifying sanctions.   RE.138, pp.5-11. Defendants further advised that the disputed information was immediately available.   RE.138, p.11.  The court reasoned that his statement during the May 16, 2008, L.R. 37.1 telephone conference, regarding post 2004-information was an order resolving the discovery dispute and denied reconsideration.    RE.138, p.7. While the court did initially indicate that that post-2004 information was discoverable during the May 16th conference, he subsequently continued that proceeding to May 19th to clarify the document issues "in lieu of going through L.R. 37 motion and sanction request."   RE.95, pp.15, 20.  Moreover, as this court has observed, an order is not effective prior to its entry on the docket.  *Reid v. White Motor Corporation*, 886 F.2d 1462, 1467 (6th Cir.1989), quoting *In re D'Arcy*, 142 F.2d 313, 315.

There was no discovery order, and consequently no violation of a discovery order justifying sanctions.  Moreover, even if there was a violation of a discovery order, drastic sanctions such as dismissal or default are not appropriate except in limited circumstances.

In *Bass,* 71 Fed.3d at 241, this court ". . . identified four factors which should be considered when reviewing a decision by a district court to dismiss a case under F.R.C.P. 37. The first factor is whether the party's failure to cooperate in discovery is due to willfulness, bad faith, or fault; the second factor is whether the adversary was prejudiced by the dismissed party's failure to cooperate in discovery; the third factor is whether the dismissed party was warned that failure to cooperate could lead to dismissal; and the fourth factor is whether less drastic sanctions were imposed or considered before dismissal was ordered."

Defendants presented a good faith discovery dispute in accordance with L.R. 37.1. The lead information prior to 2003 was destroyed prior to the subject litigation. Records regarding investors involved in the transactions in this case were provided. Index cards for other existing investors were maintained, and may have had information from 2001-2003, but these were not lead cards that defendants believed plaintiffs were requesting. Moreover, an objection was maintained on the grounds that such information related to transactions not in this case. Finally, defendants repeatedly stated that the documents covered by the objection were available for production, if so ordered, and the discovery dispute was presented to the court in mid-March well before the trial date.

Deeming facts established is considered a drastic sanction requiring willfulness if it leads to dismissal or default judgment. *Chilcutt v. United States*, 4

F.3d 1313, 1323, FN23 (5th Cir.1993).  ("[W]illfulness is not required for deeming that certain facts are established for purposes of a case unless that sanction is the equivalent of a dismissal or default judgment.")

None of the factors necessary to support drastic sanctions were present in this case. Defendants were not acting in bad faith. The discovery dispute was timely presented and delayed only by reason of the court's schedule. There was no warning that failure to cooperate would lead to dismissal of defendants' preemption defense. There is no indication that lesser sanctions were considered.

Erroneous application of F.R.C.P. 37 in imposing the sanction of dismissal is considered an abuse of discretion requiring reversal. *Beil*, 15 F.3d at 552. The district court's sanction, without a motion to compel, discovery order or order violation is clearly an erroneous application of F.R.C.P. 37. Moreover, the factors necessary to support drastic sanctions are not present in this case. Accordingly, the discovery sanction order and subsequent judgment based on this order should be reversed.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants-Appellants respectfully request that this court reverse the district court's judgment in this case.

Respectfully submitted,

BLACK, McCUSKEY, SOUERS & ARBAUGH

By:   /s/ Thomas W. Connors
   Thomas W. Connors (0007226)
   Gordon D. Woolbert, II (0068581))
   220 Market Avenue S., Suite 1000
   Canton, Ohio 44702
   Telephone:   (330) 456-8341
   Telefax: (330) 456-5756
   E-Mail: tconnors@bmsa.com
   E-Mail: gwoolbert@bmsa.com

*Counsel for Defendants-Appellants*
*Ohio Kentucky Oil Corporation*
*and Carol Campbell*

## CERTIFICATE OF COMPLIANCE

Pursuant to 6th Cir. R. 32(a), I, Thomas W. Connors, hereby certify that the Brief of Defendants-Appellants Ohio Kentucky Oil Corporation complies with the 14,000 word type-volume limitation set forth in Fed. R. App. P. 32(a)(7). The word-processing system used to prepare this Brief indicates that the word count for this Brief is 13,847 excluding those sections that do not count toward the limitation pursuant to Fed. R. App. P. 32(a)(7)(B)(iii).

                                               /s/ Thomas W. Connors

                                           Thomas W. Connors
                                           *Counsel for Defendants-Appellants*
                                           *Ohio Kentucky Oil Corporation*
                                           *and Carol Campbell*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 18, 2010, a copy of the foregoing was filed electronically.  Notice of the filing will be sent to all parties by operation of the Court's electronic filing system.

Dennis R. Rose, Esq.
3300 BP Tower,
200 Public Square,
Cleveland, Ohio, 44114

*Counsel for Plaintiffs-Appellees*

_____/s/ Thomas W. Connors_____
*Counsel for Defendants-Appellants*
*Ohio Kentucky Oil Corporation*
*and Carol Campbell*

G:\twc\PLEADINGS 2010\OK-Fencorp-- 2-Appellate Brief-final.doc\03/16/10\jal

**ADDENDUM**

# APPELLANTS' DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS*

| Record Entry Number | Description of Entry | Date |
| --- | --- | --- |
| RE.1, pp.4-7, 11-15, RE.1-1, RE.1-2, RE.1-3, RE.1-4 | Complaint | 3/6/06 |
| RE.103, pp.12, 13, 15 | Defendants' Proposed Jury Instructions | 5/21/08 |
| RE.115-2; 115-3 | Defendants' Response to Plaintiffs' Requested Discovery Sanctions; Plaintiffs' First Set of Interrogatories to Defendants; Defendants' Response to Plaintiffs' First Set of Interrogatories | 5/23/08 |
| RE.116, pp.3, 12, 22-23, 36, 44, 61-62, 67 | Final Pretrial Hearing Transcript | 5/23/08 |
| RE.132, pp.1, 5-7 | Order Sanctioning Defendants | 5/28/08 |
| RE.138, pp.5-11, 18-19, 144-46, 149-50, 155-56, 164-65 | Trial Transcript Vol. 1, pp.1-196 | 6/2/08 |
| RE.149, pp.20, 23, 26 | Joint Proposed Jury Instructions | 6/7/08 |
| RE.154 | Defendants' Memorandum re. Objection to Plaintiffs' Tax Benefits Instruction | 6/7/08 |
| RE.155, p.1141, 1089-90 | Trial Transcript Vol. 7, pp. 1085-1167 | 6/8/08 |
| RE.162, pp.1188, 1191, 1197, 1201, 1298-99 | Trial Transcript Vol. 8, pp. 1168-1304 | 6/10/08 |

| RE.163, pp.2-4, 10, 16 | Verdict for Plaintiffs | 6/10/08 |
|---|---|---|
| RE.166 | Defendants' Motion to Amend Judgment/New Trial | 6/18/08 |
| RE.167 | Defendants' Motion for Judgment as a Matter of Law | 6/18/08 |
| RE.172, pp.1324-25 | Trial Transcript of Jury Verdict | 6/25/08 |
| RE.174, p.4 | Judgment Entry on Jury Verdict | 6/30/08 |
| RE.177, pp.1-2 | Fencorp's Opposition to Motion to Amend Judgment | 7/7/08 |
| RE.178, p.4 | Plaintiffs' Motion to Amend Judgment | 7/11/08 |
| RE.197, pp.5, 8, 15 | Order re: Motion to Amend Judgment/New Trial | 8/18/09 |
| RE.35, pp.19 | Order re: Defendants' Motions to Dismiss | 9/28/07 |
| RE.53-1 | Judgment Entry, Ohio Kentucky Oil Corp. v. Nolfi, Stark County Common Pleas Case No. 2006CV0007 | 2/25/08 |
| RE.64;  RE.64-3, pp.9-10 | Defendants' Opposition to Motion for Summary Judgment; Joint Venture Agreement | 3/19/08 |
| RE.78, pp.9, 13-14 | Order re. Defendants' Motion for Summary Judgment | 5/12/08 |
| RE.94;  RE.94-6, p.3 | Defendants' Memorandum re. Discovery Dispute;  Plaintiffs' Answers to Defendants' First Set of Interrogatories | 5/19/08 |

| | | |
|---|---|---|
| RE.95, pp. 11, 15, 20 | Pretrial Conference Transcript | 5/20/08 |

\* RE.1 is filed in Case No. 06-0506. The remaining documents are filed in Case No. 06-260.

Westlaw.

C

**Effective:[See Text Amendments]**

Code of Federal Regulations Currentness
  Title 17. Commodity and Securities Exchanges
    Chapter II. Securities and Exchange Commission
      Part 230. General Rules and Regulations, Securities Act of 1933 (Refs & Annos)
        Regulation D. Rules Governing the Limited Offer and Sale of Securities Without Registration Under the Securities Act of 1933 (Refs & Annos)

        ➝ **§ 230.506 Exemption for limited offers and sales without regard to dollar amount of offering.**

(a) Exemption. Offers and sales of securities by an issuer that satisfy the conditions in paragraph (b) of this section shall be deemed to be transactions not involving any public offering within the meaning of section 4(2) of the Act.

(b) Conditions to be met--

    (1) General conditions. To qualify for an exemption under this section, offers and sales must satisfy all the terms and conditions of §§ 230.501 and 230.502.

    (2) Specific Conditions--

    (i) Limitation on number of purchasers. There are no more than or the issuer reasonably believes that there are no more than 35 purchasers of securities from the issuer in any offering under this section.

    NOTE: See § 230.501(e) for the calculation of

the number of purchasers and § 230.502(a) for what may or may not constitute an offering under this section.

    (ii) Nature of purchasers. Each purchaser who is not an accredited investor either alone or with his purchaser representative(s) has such knowledge and experience in financial and business matters that he is capable of evaluating the merits and risks of the prospective investment, or the issuer reasonably believes immediately prior to making any sale that such purchaser comes within this description.

[54 FR 11372, March 20, 1989]

SOURCE: Sections 230.501 to 230.506 appear at 47 FR 11262, March 16, 1982; 62 FR 24573, May 6, 1997; 63 FR 6384, Feb. 6, 1998; 63 FR 13943, 13984, March 23, 1998; 64 FR 61449, Nov. 10, 1999; 65 FR 47284, Aug. 2, 2000; 66 FR 8896, 9017, Feb. 5, 2001; 67 FR 230, Jan. 2, 2002; 67 FR 13536, March 22, 2002; 67 FR 19673, April 23, 2002; 68 FR 57777, Oct. 6, 2003; 72 FR 20414, April 24, 2007; 72 FR 71566, Dec. 17, 2007, unless otherwise noted.

AUTHORITY: 15 U.S.C. 77b, 77c, 77d, 77f, 77g, 77h, 77j, 77r, 77s, 77z-3, 77sss, 78c, 78d, 78j, 78l, 78m, 78n, 78o, 78t, 78w, 78ll(d), 78mm, 80a-8, 80a-24, 80a-28, 80a-29, 80a-30, and 80a-37, unless otherwise noted.; Section 230.151 is also issued under 15 U.S.C. 77s(a).; Section 230.160 is also issued under Section 104(d) of the Electronic Signatures Act.; Sections 230.400 to 230.499 issued under 15 U.S.C. 77f, 77h, 77j, 77s, unless otherwise noted.; Section 230.473 is also issued under 15 U.S.C. 79(t).; Section 230.502 is also issued under 15 U.S.C. 80a-8, 80a-29, 80a-30.; Secs. 3(b), 4(2), 19(a), 19(c), 48 Stat. 75, 77, 85; sec. 209, 48 Stat. 908; c. 122, 59 Stat. 167; sec. 12, 78 Stat. 580; 84

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

**C**

Effective:[See Text Amendments]

Code of Federal Regulations Currentness
  Title 17. Commodity and Securities Exchanges
    Chapter II. Securities and Exchange Commission
      Part 240. General Rules and Regulations, Securities Exchange Act of 1934 (Refs & Annos)
        ⌐ Subpart A. Rules and Regulations Under the Securities Exchange Act of 1934
          ⌐ Manipulative and Deceptive Devices and Contrivances

→ **§ 240.10b-5 Employment of manipulative and deceptive devices.**

<Notes of Decisions for 17 CFR § 240.10b-5 are displayed in separate documents. Notes of Decisions for subdivisions I to IX are contained in this document. For text of section, and references, see first document for 17 CFR § 240.10b-5. For Notes of Decisions for subdivisions X to end, see documents for 17 CFR § 240.10b-5, post.>

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

(Authority: Sec. 10; 48 Stat. 891; 15 U.S.C. 78j)

[13 FR 8183, Dec. 22, 1948, as amended at 16 FR 7928, Aug. 11, 1951]

SOURCE: 50 FR 27946, July 9, 1985; 50 FR 28394, July 12, 1985; 50 FR 37654, Sept. 17, 1985; 50 FR 41870, Oct. 16, 1985; 50 FR 42678, Oct. 22, 1985; 51 FR 8801, March 14, 1986; 51 FR 12127, April 9, 1986; 51 FR 14982, April 22, 1986; 51 FR 18580, May 21, 1986; 51 FR 25882, July 17, 1986; 51 FR 36551, Oct. 14, 1986; 51 FR 44275, Dec. 9, 1986; 52 FR 3000, Jan. 30, 1987; 52 FR 8877, March 20, 1987; 52 FR 9154, March 23, 1987; 52 FR 16838, May 6, 1987; 52 FR 27969, July 24, 1987; 52 FR 42279, Nov. 4, 1987; 53 FR 26394, July 12, 1988; 53 FR 33459, Aug. 31, 1988; 53 FR 37289, Sept. 26, 1988; 54 FR 23976, June 5, 1989; 54 FR 28813, July 10, 1989; 54 FR 30031, July 18, 1989; 54 FR 35481, Aug. 28, 1989; 54 FR 37789, Sept. 13, 1989; 55 FR 23929, June 13, 1990; 55 FR 50320, Dec. 6, 1990; 56 FR 7265, Feb. 21, 1991; 56 FR 9129, March 5, 1991; 56 FR 12118, March 22, 1991; 56 FR 19156, April 25, 1991; 56 FR 28322, June 20, 1991; 56 FR 30067, July 1, 1991; 57 FR 18218, April 29, 1992; 57 FR 32168, July 21, 1992; 57 FR 36501, Aug. 13, 1992; 57 FR 47409, Oct. 16, 1992; 58 FR 14682, March 18, 1993; 59 FR 10985, March 9, 1994; 59 FR 55012, Nov. 2, 1994; 59 FR 66709, Dec. 28, 1994; 61 FR 48328, Sept. 12, 1996; 62 FR 543, Jan. 3, 1997; 62 FR 6071, Feb. 10, 1997; 62 FR 12749, March 18, 1997; 62 FR 35340, July 1, 1997; 63 FR 8102, Feb. 18, 1998; 63 FR 13944, March 23, 1998; 65 FR 76087, Dec. 5, 2000; 66 FR 21659, May 1, 2001; 66 FR 43741, Aug. 20, 2001; 66 FR 55837, 55838, Nov. 2, 2001; 67 FR 247, Jan. 2, 2002; 67 FR 57288, Sept. 9,

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

☞

**Effective: December 21, 2000**

United States Code Annotated Currentness
  Title 15. Commerce and Trade
    Chapter 2B. Securities Exchanges (Refs & Annos)
    → § 78j. Manipulative and deceptive devices

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange--

**(a)(1)** To effect a short sale, or to use or employ any stop-loss order in connection with the purchase or sale, of any security registered on a national securities exchange, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of in- vestors.

**(2)** Paragraph (1) of this subsection shall not apply to security futures products.

**(b)** To use or employ, in connection with the purchase or sale of any security registered on a national securit- ies exchange or any security not so registered, or any securities-based swap agreement (as defined in section 206B of the Gramm-Leach-Bliley Act), any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public in- terest or for the protection of investors.

Rules promulgated under subsection (b) of this section that prohibit fraud, manipulation, or insider trading (but not rules imposing or specifying reporting or recordkeeping requirements, procedures, or standards as prophy- lactic measures against fraud, manipulation, or insider trading), and judicial precedents decided under subsection (b) of this section and rules promulgated thereunder that prohibit fraud, manipulation, or insider trading, shall apply to security-based swap agreements (as defined in section 206B of the Gramm-Leach-Bliley Act) to the same extent as they apply to securities. Judicial precedents decided under section 77q(a) of this title and sections 78i, 78o, 78p, 78t, and 78u-1 of this title, and judicial precedents decided under applicable rules promulgated under such sections, shall apply to security-based swap agreements (as defined in section 206B of the Gramm- Leach-Bliley Act) to the same extent as they apply to securities.

CREDIT(S)

(June 6, 1934, c. 404, Title I, § 10, 48 Stat. 891; Dec. 21, 2000, Pub.L. 106-554, § 1(a)(5) [Title II, § 206(g), Title III, § 303(d)], 114 Stat. 2763, 2763A-432, 2763A-454.)

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Current through P.L. 111-143 (excluding P.L. 111-141) approved 3-1-10

Westlaw. (C) 2010 Thomson Reuters. No Claim to Orig. U.S. Govt. Works.

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw

OH LEGIS 11 (2003)                                                                              Page 1
2003 Ohio Laws File 11 (Am. Sub. H.B. 7)
(Publication page references are not available for this document.)

OHIO 2003 SESSION LAW SERVICE
125TH GENERAL ASSEMBLY

Copr. © West Group 2003.  All rights reserved.

Additions are indicated by **Text**; deletions by
~~Text~~.  Changes in tables are made but not highlighted.
File 11
Am. Sub. H.B. No. 7
CORPORATIONS--SECURITIES--ENFORCEMENT AUTHORITY
 To amend sections 111.16, 1701.01, 1701.831, 1707.01, 1707.02, 1707.08, 1707.09,
1707.11, 1707.16, 1707.23, 1707.28, 1707.40, 1707.41, 1707.42, 1707.43, 1707.44,
and 2913.02 and to enact sections 1707.131 and 1707.261 of the Revised Code to
modify the Corporation Law regarding special meetings of shareholders in connec-
tion with tender offer, control share acquisition bids;  to modify the Securities
Law with respect to securities to which it applies, requirements for registration
of securities, the designation of the Secretary of State to receive service of
process, the application of remedies under the Securities Law, the Attorney Gener-
al's enforcement authority on behalf of persons injured by a violation, the stat-
utes of limitations governing an action for specified violations, and the prohibi-
tions against certain misleading actions;  to increase the criminal penalty for
certain theft offenses and create a new criminal aggravated theft offense;  and to
specify a fee for filing a service of process with the Secretary of State.

        Be it enacted by the General Assembly of the State of Ohio:
 SECTION 1. That sections 111.16, 1701.01, 1701.831, 1707.01, 1707.02, 1707.08,
1707.09, 1707.11, 1707.16, 1707.23, 1707.28, 1707.40, 1707.41, 1707.42, 1707.43,
1707.44, and 2913.02 be amended and sections 1707.131 and 1707.261 of the Revised
Code be enacted to read as follows:

<< OH ST 111.16 >>
The secretary of state shall charge and collect, for the benefit of the state,
the following fees:

(A) For filing and recording articles of incorporation of a domestic corporation,
including designation of agent:

(1) Wherein the corporation shall not be authorized to issue any shares of capit-
al stock, one hundred twenty-five dollars;

Copr. © West 2008 No Claim to Orig. Govt. Works

2003 Ohio Laws File 11 (Am. Sub. H.B. 7)
(Publication page references are not available for this document.)

(2) Except as otherwise provided in this division or division (B)(3), (4), (5), or (6) of this section, a violation of this section is petty theft, a misdemeanor of the first degree. If the value of the property or services stolen is five hundred dollars or more and is less than five thousand dollars or if the property stolen is any of the property listed in section 2913.71 of the Revised Code, a violation of this section is theft, a felony of the fifth degree. If the value of the property or services stolen is five thousand dollars or more and is less than one hundred thousand dollars, a violation of this section is grand theft, a felony of the fourth degree. If the value of the property or services stolen is one hundred thousand dollars or more **and is less than five hundred thousand dollars**, a violation of this section is aggravated theft, a felony of the third degree. **If the value of the property or services is five hundred thousand dollars or more and is less than one million dollars, a violation of this section is aggravated theft, a felony of the second degree.** If the value of the property or services stolen is **one million dollars or more, a violation of this section is aggravated theft of one million dollars or more, a felony of the first degree.**

(3) Except as otherwise provided in division (B)(4), (5), or (6) of this section, if the victim of the offense is an elderly person or disabled adult, a violation of this section is theft from an elderly person or disabled adult, and division (B)(3) of this section applies. Except as otherwise provided in this division, theft from an elderly person or disabled adult is a felony of the fifth degree. If the value of the property or services stolen is five hundred dollars or more and is less than five thousand dollars, theft from an elderly person or disabled adult is a felony of the fourth degree. If the value of the property or services stolen is five thousand dollars or more and is less than twenty-five thousand dollars, theft from an elderly person or disabled adult is a felony of the third degree. If the value of the property or services stolen is twenty-five thousand dollars or more **and is less than one hundred thousand dollars**, theft from an elderly person or disabled adult is a felony of the second degree. **If the value of the property or services stolen is one hundred thousand dollars or more, theft from an elderly person or disabled adult is a felony of the first degree.**

(4) If the property stolen is a firearm or dangerous ordnance, a violation of this section is grand theft, a felony of the fourth degree.

(5) If the property stolen is a motor vehicle, a violation of this section is grand theft of a motor vehicle, a felony of the fourth degree.

(6) If the property stolen is any dangerous drug, a violation of this section is theft of drugs, a felony of the fourth degree, or, if the offender previously has been convicted of a felony drug abuse offense, a felony of the third degree.

SECTION 2. That existing sections 111.16, 1701.01, 1701.831, 1707.01, 1707.02, 1707.08, 1707.09, 1707.11, 1707.16, 1707.23, 1707.28, 1707.40, 1707.41, 1707.42, 1707.43, 1707.44, and 2913.02 of the Revised Code are hereby repealed.

Copr. © West 2008 No Claim to Orig. Govt. Works

2003 Ohio Laws File 11 (Am. Sub. H.B. 7)
**(Publication page references are not available for this document.)**

<div align="center">&lt;&lt; Note:  OH ST 111.16, 1707.01 &gt;&gt;</div>

  SECTION 3. Section 111.16 of the Revised Code is presented in this act as a com-
posite of the section as amended by both Sub. H.B. 278 and Sub. H.B. 349 of the
124th General Assembly.  Section 1707.01 of the Revised Code is presented in this
act as a composite of the section as amended by both S.B. 32 and Sub. S.B. 108 of
the 124th General Assembly.  The General Assembly, applying the principle stated
in division (B) of section 1.52 of the Revised Code that amendments are to be har-
monized if reasonably capable of simultaneous operation, finds that the composites
are the resulting versions of the sections in effect prior to the effective date
of the sections as presented in this act.

Date Passed: April 29, 2003

Approved June 17, 2003

Act. Eff. September 16, 2003

OH LEGIS 11 (2003)

END OF DOCUMENT

Copr. © West 2008 No Claim to Orig. Govt. Works



**C**

United States Code Annotated Currentness

    Federal Rules of Civil Procedure for the United States District Courts (Refs & Annos)

        Title III. Pleadings and Motions

          **➡ Rule 9. Pleading Special Matters**

**(a) Capacity or Authority to Sue; Legal Existence.**

    **(1)** *In General.*Except when required to show that the court has jurisdiction, a pleading need not allege:

    **(A)** a party's capacity to sue or be sued;

    **(B)** a party's authority to sue or be sued in a representative capacity; or

    **(C)** the legal existence of an organized association of persons that is made a party.

    **(2)** *Raising Those Issues.*To raise any of those issues, a party must do so by a specific denial, which must state any supporting facts that are peculiarly within the party's knowledge.

**(b) Fraud or Mistake; Conditions of Mind.**In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

**(c) Conditions Precedent.**In pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed. But when denying that a condition precedent has occurred or been performed, a party must do so with particularity.

**(d) Official Document or Act.**In pleading an official document or official act, it suffices to allege that the document was legally issued or the act legally done.

**(e) Judgment.**In pleading a judgment or decision of a domestic or foreign court, a judicial or quasi-judicial tribunal, or a board or officer, it suffices to plead the judgment or decision without showing jurisdiction to render it.

**(f) Time and Place.**An allegation of time or place is material when testing the sufficiency of a pleading.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

**(g) Special Damages.** If an item of special damage is claimed, it must be specifically stated.

**(h) Admiralty or Maritime Claim.**

**(1)** *How Designated.* If a claim for relief is within the admiralty or maritime jurisdiction and also within the court's subject-matter jurisdiction on some other ground, the pleading may designate the claim as an admiralty or maritime claim for purposes of Rules 14(c), 38(e), and 82 and the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. A claim cognizable only in the admiralty or maritime jurisdiction is an admiralty or maritime claim for those purposes, whether or not so designated.

**(2)** *Designation for Appeal.* A case that includes an admiralty or maritime claim within this subdivision (h) is an admiralty case within 28 U.S.C. § 1292(a)(3).

CREDIT(S)

(Amended February 28, 1966, effective July 1, 1966; December 4, 1967, effective July 1, 1968; March 30, 1970, effective July 1, 1970; March 2, 1987, effective August 1, 1987; April 11, 1997, effective December 1, 1997; April 12, 2006, effective December 1, 2006; April 30, 2007, effective December 1, 2007.)

Amendments received to 01-01-10

Westlaw. (C) 2010 Thomson Reuters. No Claim to Orig. U.S. Govt. Works.

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Federal Rules of Civil Procedure Rule 37                                                                 Page 1

**C**

United States Code Annotated Currentness
    Federal Rules of Civil Procedure for the United States District Courts (Refs & Annos)
        Title V. Disclosures and Discovery (Refs & Annos)
          **Rule 37. Failure to Make Disclosures or to Cooperate in Discovery; Sanctions**

**(a) Motion for an Order Compelling Disclosure or Discovery.**

**(1)** *In General.* On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action.

**(2)** *Appropriate Court.* A motion for an order to a party must be made in the court where the action is pending. A motion for an order to a nonparty must be made in the court where the discovery is or will be taken.

**(3)** *Specific Motions.*

  **(A)** *To Compel Disclosure.* If a party fails to make a disclosure required by Rule 26(a), any other party may move to compel disclosure and for appropriate sanctions.

  **(B)** *To Compel a Discovery Response.* A party seeking discovery may move for an order compelling an answer, designation, production, or inspection. This motion may be made if:

    **(i)** a deponent fails to answer a question asked under Rule 30 or 31;

    **(ii)** a corporation or other entity fails to make a designation under Rule 30(b)(6) or 31(a)(4);

    **(iii)** a party fails to answer an interrogatory submitted under Rule 33; or

    **(iv)** a party fails to respond that inspection will be permitted--or fails to permit inspection--as requested under Rule 34.

  **(C)** *Related to a Deposition.* When taking an oral deposition, the party asking a question may complete or adjourn the examination before moving for an order.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

**(4)** *Evasive or Incomplete Disclosure, Answer, or Response.* For purposes of this subdivision (a), an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond.

**(5)** *Payment of Expenses; Protective Orders.*

**(A)** *If the Motion Is Granted (or Disclosure or Discovery Is Provided After Filing).* If the motion is granted--or if the disclosure or requested discovery is provided after the motion was filed--the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:

**(i)** the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;

**(ii)** the opposing party's nondisclosure, response, or objection was substantially justified; or

**(iii)** other circumstances make an award of expenses unjust.

**(B)** *If the Motion Is Denied.* If the motion is denied, the court may issue any protective order authorized under Rule 26(c) and must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees. But the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust.

**(C)** *If the Motion Is Granted in Part and Denied in Part.* If the motion is granted in part and denied in part, the court may issue any protective order authorized under Rule 26(c) and may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion.

**(b) Failure to Comply with a Court Order.**

**(1)** *Sanctions in the District Where the Deposition Is Taken.* If the court where the discovery is taken orders a deponent to be sworn or to answer a question and the deponent fails to obey, the failure may be treated as contempt of court.

**(2)** *Sanctions in the District Where the Action Is Pending.*

**(A)** *For Not Obeying a Discovery Order.* If a party or a party's officer, director, or managing agent--or a witness designated under Rule 30(b)(6) or 31(a)(4)--fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

**(i)** directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

**(ii)** prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

**(iii)** striking pleadings in whole or in part;

**(iv)** staying further proceedings until the order is obeyed;

**(v)** dismissing the action or proceeding in whole or in part;

**(vi)** rendering a default judgment against the disobedient party; or

**(vii)** treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

**(B)** *For Not Producing a Person for Examination.* If a party fails to comply with an order under Rule 35(a) requiring it to produce another person for examination, the court may issue any of the orders listed in Rule 37(b)(2)(A)(i)-(vi), unless the disobedient party shows that it cannot produce the other person.

**(C)** *Payment of Expenses.* Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

## (c) Failure to Disclose, to Supplement an Earlier Response, or to Admit.

**(1)** *Failure to Disclose or Supplement.* If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:

**(A)** may order payment of the reasonable expenses, including attorney's fees, caused by the failure;

**(B)** may inform the jury of the party's failure; and

**(C)** may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

**(2)** *Failure to Admit.* If a party fails to admit what is requested under Rule 36 and if the requesting party later proves a document to be genuine or the matter true, the requesting party may move that the party who failed to admit pay the reasonable expenses, including attorney's fees, incurred in making that proof. The court must so order unless:

**(A)** the request was held objectionable under Rule 36(a);

**(B)** the admission sought was of no substantial importance;

**(C)** the party failing to admit had a reasonable ground to believe that it might prevail on the matter; or

**(D)** there was other good reason for the failure to admit.

**(d) Party's Failure to Attend Its Own Deposition, Serve Answers to Interrogatories, or Respond to a Request for Inspection.**

**(1)** *In General.*

**(A)** *Motion; Grounds for Sanctions.* The court where the action is pending may, on motion, order sanctions if:

**(i)** a party or a party's officer, director, or managing agent--or a person designated under Rule 30(b)(6) or 31(a)(4)--fails, after being served with proper notice, to appear for that person's deposition; or

**(ii)** a party, after being properly served with interrogatories under Rule 33 or a request for inspection under Rule 34, fails to serve its answers, objections, or written response.

**(B)** *Certification.* A motion for sanctions for failing to answer or respond must include a certification that the movant has in good faith conferred or attempted to confer with the party failing to act in an effort to obtain the answer or response without court action.

**(2)** *Unacceptable Excuse for Failing to Act.* A failure described in Rule 37(d)(1)(A) is not excused on the ground that the discovery sought was objectionable, unless the party failing to act has a pending motion for a protective order under Rule 26(c).

**(3)** *Types of Sanctions.* Sanctions may include any of the orders listed in Rule 37(b)(2)(A)(i)-(vi). Instead of or in addition to these sanctions, the court must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

**(e) Failure to Provide Electronically Stored Information.** Absent exceptional circumstances, a court may not impose sanctions under these rules on a party for failing to provide electronically stored information lost as a result of the routine, good-faith operation of an electronic information system.

**(f) Failure to Participate in Framing a Discovery Plan.** If a party or its attorney fails to participate in good faith in developing and submitting a proposed discovery plan as required by Rule 26(f), the court may, after giving an opportunity to be heard, require that party or attorney to pay to any other party the reasonable expenses, including attorney's fees, caused by the failure.

CREDIT(S)

(Amended December 29, 1948, effective October 20, 1949; March 30, 1970, effective July 1, 1970; April 29, 1980, effective August 1, 1980; amended by Pub.L. 96-481, Title II, § 205(a), October 21, 1980, 94 Stat. 2330, effective October 1, 1981; amended March 2, 1987, effective August 1, 1987; April 22, 1993, effective December 1, 1993; April 17, 2000, effective December 1, 2000; April 12, 2006, effective December 1, 2006; April 30, 2007, effective December 1, 2007.)

Amendments received to 01-01-10

Westlaw. (C) 2010 Thomson Reuters. No Claim to Orig. U.S. Govt. Works.

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



**C**

United States Code Annotated Currentness
    Federal Rules of Civil Procedure for the United States District Courts (Refs & Annos)
        Title VI. Trials
          ➡ **Rule 49. Special Verdict; General Verdict and Questions**

**(a) Special Verdict.**

  **(1)** *In General.* The court may require a jury to return only a special verdict in the form of a special written finding on each issue of fact. The court may do so by:

    **(A)** submitting written questions susceptible of a categorical or other brief answer;

    **(B)** submitting written forms of the special findings that might properly be made under the pleadings and evidence; or

    **(C)** using any other method that the court considers appropriate.

  **(2)** *Instructions.* The court must give the instructions and explanations necessary to enable the jury to make its findings on each submitted issue.

  **(3)** *Issues Not Submitted.* A party waives the right to a jury trial on any issue of fact raised by the pleadings or evidence but not submitted to the jury unless, before the jury retires, the party demands its submission to the jury. If the party does not demand submission, the court may make a finding on the issue. If the court makes no finding, it is considered to have made a finding consistent with its judgment on the special verdict.

**(b) General Verdict with Answers to Written Questions.**

  **(1)** *In General.* The court may submit to the jury forms for a general verdict, together with written questions on one or more issues of fact that the jury must decide. The court must give the instructions and explanations necessary to enable the jury to render a general verdict and answer the questions in writing, and must direct the jury to do both.

  **(2)** *Verdict and Answers Consistent.* When the general verdict and the answers are consistent, the court must approve, for entry under Rule 58, an appropriate judgment on the verdict and answers.

  **(3)** *Answers Inconsistent with the Verdict.* When the answers are consistent with each other but one or more is

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

inconsistent with the general verdict, the court may:

**(A)** approve, for entry under Rule 58, an appropriate judgment according to the answers, notwithstanding the general verdict;

**(B)** direct the jury to further consider its answers and verdict; or

**(C)** order a new trial.

**(4)** ***Answers Inconsistent with Each Other and the Verdict.*** When the answers are inconsistent with each other and one or more is also inconsistent with the general verdict, judgment must not be entered; instead, the court must direct the jury to further consider its answers and verdict, or must order a new trial.

CREDIT(S)

(Amended January 21, 1963, effective July 1, 1963; March 2, 1987, effective August 1, 1987; April 30, 2007, effective December 1, 2007.)

Amendments received to 01-01-10

Westlaw. (C) 2010 Thomson Reuters. No Claim to Orig. U.S. Govt. Works.

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



C

United States Code Annotated Currentness

    Federal Rules of Civil Procedure for the United States District Courts (Refs & Annos)

        Title VII. Judgment

        ➡ **Rule 59. New Trial; Altering or Amending a Judgment**

**(a) In General.**

    **(1)** *Grounds for New Trial.* The court may, on motion, grant a new trial on all or some of the issues--and to any party--as follows:

        **(A)** after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court; or

        **(B)** after a nonjury trial, for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court.

    **(2)** *Further Action After a Nonjury Trial.* After a nonjury trial, the court may, on motion for a new trial, open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment.

**(b) Time to File a Motion for a New Trial.** A motion for a new trial must be filed no later than 28 days after the entry of judgment.

**(c) Time to Serve Affidavits.** When a motion for a new trial is based on affidavits, they must be filed with the motion. The opposing party has 14 days after being served to file opposing affidavits. The court may permit reply affidavits.

**(d) New Trial on the Court's Initiative or for Reasons Not in the Motion.** No later than 28 days after the entry of judgment, the court, on its own, may order a new trial for any reason that would justify granting one on a party's motion. After giving the parties notice and an opportunity to be heard, the court may grant a timely motion for a new trial for a reason not stated in the motion. In either event, the court must specify the reasons in its order.

**(e) Motion to Alter or Amend a Judgment.** A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

CREDIT(S)

(Amended December 27, 1946, effective March 19, 1948; February 28, 1966, effective July 1, 1966; April 27, 1995, effective December 1, 1995; April 30, 2007, effective December 1, 2007; March 26, 2009, effective December 1, 2009.)

Amendments received to 01-01-10

Westlaw. (C) 2010 Thomson Reuters. No Claim to Orig. U.S. Govt. Works.

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



**C**
Baldwin's Ohio Revised Code Annotated Currentness
 General Provisions
  Chapter 1. Definitions; Rules of Construction (Refs & Annos)
   Statutory Provisions (Refs & Annos)
   → **1.58 Effect of reenactment, amendment, or repeal of statute on existing conditions**

(A) The reenactment, amendment, or repeal of a statute does not, except as provided in division (B) of this sec- tion:

(1) Affect the prior operation of the statute or any prior action taken thereunder;

(2) Affect any validation, cure, right, privilege, obligation, or liability previously acquired, accrued, accorded, or incurred thereunder;

(3) Affect any violation thereof or penalty, forfeiture, or punishment incurred in respect thereto, prior to the amendment or repeal;

(4) Affect any investigation, proceeding, or remedy in respect of any such privilege, obligation, liability, pen- alty, forfeiture, or punishment; and the investigation, proceeding, or remedy may be instituted, continued, or en- forced, and the penalty, forfeiture, or punishment imposed, as if the statute had not been repealed or amended.

(B) If the penalty, forfeiture, or punishment for any offense is reduced by a reenactment or amendment of a stat- ute, the penalty, forfeiture, or punishment, if not already imposed, shall be imposed according to the statute as amended.

CREDIT(S)

(1971 H 607, eff. 1-3-72)

Current through 2010 File 18 of the 128th GA (2009-2010), apv. 2/26/10 and filed with the Secretary of State by 2/28/10.

(c) 2010 Thomson Reuters

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

☞

Baldwin's Ohio Revised Code Annotated Currentness
  Title XVII. Corporations--Partnerships (Refs & Annos)
    Chapter 1707. Securities (Refs & Annos)
      Liabilities and Remedies
      → **1707.43 Remedies of purchaser in unlawful sale**

(A) Subject to divisions (B) and (C) of this section, every sale or contract for sale made in violation of Chapter 1707. of the Revised Code, is voidable at the election of the purchaser. The person making such sale or contract for sale, and every person that has participated in or aided the seller in any way in making such sale or contract for sale, are jointly and severally liable to the purchaser, in an action at law in any court of competent jurisdiction, upon tender to the seller in person or in open court of the securities sold or of the contract made, for the full amount paid by the purchaser and for all taxable court costs, unless the court determines that the violation did not materially affect the protection contemplated by the violated provision.

(B) No action for the recovery of the purchase price as provided for in this section, and no other action for any recovery based upon or arising out of a sale or contract for sale made in violation of Chapter 1707. of the Revised Code, shall be brought more than two years after the plaintiff knew, or had reason to know, of the facts by reason of which the actions of the person or director were unlawful, or more than five years from the date of such sale or contract for sale, whichever is the shorter period.

(C) No purchaser is entitled to the benefit of this section who has failed to accept, within thirty days from the date of such offer, an offer in writing made after two weeks from the date of the sale or contract of sale, by the seller or by any person that has participated in or aided the seller in any way in making the sale or contract of sale, to take back the security in question and to refund the full amount paid by the purchaser.

CREDIT(S)

(2003 H 7, eff. 9-16-03; 1978 S 139, eff. 7-20-78; 1953 H 1; GC 8624-48a)

Current through 2010 File 18 of the 128th GA (2009-2010), apv. 2/26/10 and filed with the Secretary of State by 2/28/10.

(c) 2010 Thomson Reuters

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

**C**

Ohio Federal Court Rules Currentness
  Local Rules for the United States District Court for the Northern District of Ohio
    Local Civil Rules
      Chapter V. Discovery
      → **Rule 37.1 Discovery Disputes**

**(a)** In the absence of a Judicial Officer establishing an alternative procedure for handling discovery disputes, the following procedure shall apply.

(1) Discovery disputes shall be referred to a Judicial Officer only after counsel for the party seeking the disputed discovery has made, and certified to the Court the making of, sincere, good faith efforts to resolve such disputes.

(2) The Judicial Officer may attempt to resolve the discovery dispute by telephone conference.

(3) In the event the dispute is not resolved by the telephone conference, the parties shall outline their respective positions by letter and the Judicial Officer shall attempt to resolve the dispute without additional legal memor- anda.

(4) If the Judicial Officer still is unable to resolve the dispute, the parties may file their respective memoranda in support of and in opposition to the requested discovery by a date set by the Judicial Officer, who may schedule a hearing on the motion to compel.

**(b)** No discovery dispute shall be brought to the attention of the Court, and no motion to compel may be filed, more than ten (10) days after the discovery cut-off date.

CREDIT(S)

[Effective January 1, 1992; amended effective June 9, 1992; December 1, 1993; renumbered April 7, 1997; amended effective January 15, 1998; September 23, 2002.]

U. S. Dist. Ct. Rules N.D.Ohio, LR 37.1, OH R USDCTND LR 37.1

Current with amendments received through 2/1/2010

© 2010 Thomson Reuters. No Claim to Orig. U.S. Govt. Works.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.